Rebecca Lee
WILKUS–SCHMIDT–HIGHT,
petitioner, Respondent,

v.

Paul Anthony Patrick
WILKUS, Appellant.

No. C5–86–1108.

Court of Appeals of Minnesota.

Dec. 23, 1986.

Nancy G. Moehle, Minneapolis, for appellant.

Steven C. Pundt, Martha E. Hellander, Minneapolis, for respondent.

Considered and decided by RANDALL, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

RANDALL, Judge.

Paul Wilkus appeals, pursuant to Minn. R.Civ.App.P. 103.03(d), from an order denying his motion for amended findings and a

new trial. The Hennepin County Family Court entered an order granting respondent a change of custody from appellant to respondent on the basis of changed circumstances. Appellant challenges the sufficiency of the court's findings and the sufficiency of the evidence to support the findings. We affirm the trial court.

## FACTS

Paul Wilkus, appellant, and Rebecca Wilkus-Schmidt-Hight, respondent, were divorced January 30, 1980. Respondent had sole custody of their son, Andy Wilkus, born March 17, 1977, subject to reasonable visitation by appellant.

In April 1982, respondent and Andy moved to Houston, Texas. Appellant brought a change of custody motion in Hennepin County District Court in August 1982, alleging unreasonable interference with his visitation. In January 1983, respondent voluntarily allowed Andy to live with appellant. She wanted to give appellant the opportunity to build a better relationship with their son, and the transfer of physical custody at the time helped her with putting together her own life.

On March 23, 1983, an amended judgment and decree was entered changing custody of Andy to appellant. Respondent believed the change of custody was temporary. The amended judgment and decree provided that either party could initiate a change of custody motion without having to establish a change of circumstances.

In July 1984, appellant and respondent had several discussions about returning custody of Andy to respondent. Respondent claims appellant, in exchange for giving custody back to her, asked that a $40,-000 debt he owed respondent's parents be cancelled. Appellant maintains the debt was discharged in bankruptcy subsequent to the dissolution and was not part of any discussion about changing custody. Respondent's attorney drafted the necessary papers for a change in custody, and respondent brought them to appellant in August 1984. Appellant did not accept the papers

and denies having agreed to a change of custody.

Andy was in Houston for the 1984 Christmas vacation. Shortly before he was to return to Minnesota on January 6, 1985, Andy began to exhibit behavioral changes. He began wetting his bed, crying, and acting fearful of his father. He refused to leave his room to go to the airport. Respondent sought professional advice and informed appellant, by phone and letter, that she was going to keep Andy for the time being because of the emotional and physical problems she had observed. On the advice of a therapist, respondent enrolled Andy in a Houston school.

Respondent filed a motion for change of custody on June 24, 1985. At a six-day evidentiary hearing in family court, Dr. Jerome N. Sherman, a child psychologist from Houston, was the only expert witness testifying who had actually tested and examined Andy.

Dr. Sherman testified that Andy was experiencing a "severe emotional upsetting" in his father's custody; that Andy exhibited signs of depression and stress; that Andy had "great amounts of fright" towards his father; that he believed the fear, anger and hostility Andy exhibited towards his father had probably intensified since the change of custody in 1983; and that Andy had stated a definite preference to live with his mother. Dr. Sherman said Andy was in danger of suffering emotional and psychological harm by continuing to live with his father. This, he testified, could be exhibited by running away, an impairment of trust, superficial relationships with adults, and a negative effect on his own self-image and self-confidence. He concluded that awarding permanent custody of Andy to his father would be harmful to Andy, and that Andy's best interests would be served by returning custody to the mother.

The Court Services' studies stated both respondent's and appellant's homes would be acceptable custodial homes for Andy. A number of the parties' friends and relatives testified that both parents loved and were

concerned for their son, and that Andy was a normal nine-year-old child. His teachers in Minnesota testified that he had not exhibited any signs of distress or difficulties in school. Andy expressed a preference to live with respondent.

In March 1986, the referee ordered a change of custody back to respondent. On April 15, 1986, appellant filed a motion for a new trial, which was denied. On July 1, 1986, appellant filed notice of appeal to the court of appeals. The amended judgment and decree of dissolution entered July 3, 1986, granted respondent custody, subject to reasonable visitation by appellant.

## ISSUES

1. Did the trial court make sufficient findings to support its conclusion that a change occurred in the circumstances of the child?

2. Did the evidence support the trial court's findings?

## ANALYSIS

### I.

*Sufficiency of Findings*

■ A child custody decision will not be set aside absent a clear abuse of the trial court's discretion. *Hein v. Hein*, 366 N.W.2d 646, 651 (Minn.Ct.App.1985). To modify custody, a court must find that a change in the circumstances has occurred since the entry of the previous custody order. *Nice-Petersen v. Nice-Petersen*, 310 N.W.2d 471, 472 (Minn.1981). In addition, a court must find:

[T]hat a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian established by the prior order unless:

(i) The custodian agrees to the modification;

(ii) The child has been integrated into the family of the petitioner with consent of the custodian; or

(iii) The child's present environment endangers his physical or emotional health or impairs his emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

Minn.Stat. § 518.18(d) (1984), *Gunderson v. Preuss* 336 N.W.2d 546, 548 (Minn.1983). The court in *Gunderson* stated:

[T]he statute should be construed to require findings on the effect of the child's present environment on his physical and emotional well-being and a weighing of the harm the child would suffer from a change of environment against the advantage to be derived from the change. Specific findings on these matters will insure compliance with section 518.18 and will also aid appellate review. *See Peterson v. Peterson*, 308 Minn. 297, 242 N.W.2d 88, 94 (1976).

*Id.* (footnote omitted).

■ Here the court made detailed findings focusing on Andy's behavior change, danger to his emotional health, factual background of the various changes in physical custody, and with particularity addressed both parties' relationship to their son. These findings were based on an unusually lengthy evidentiary hearing during which the court heard expert testimony, plus all the other evidence the parties submitted on whether there should be a custody modification.

The trial court made thirty-three detailed findings regarding the circumstances of the child and his parents. Among the trial court's findings were:[1]

(2) That for the first six years of the child's life, respondent had been the primary parent;

(10) That the parties' stipulation to a change of custody in the spring of 1983 contained a provision that either party

---

1. The eleven findings selected, which represent the attention and detail with which the court addressed the issue, are paraphrased for the sake of brevity.

might initiate a change of custody motion without the necessity of establishing a change of circumstances;

(16) That appellant requested respondent's brother, an attorney, draft the legal documents needed to change custody back to respondent[2] and that one issue negotiated by the parties was appellant's request for a release of his obligation to pay a $40,000 debt to petitioner's parents.[3]

(18) That when respondent flew to Minnesota with the child and the change of custody documents, appellant rejected the documents and any agreement about change in custody. This upset the child;

(20) That respondent did not return the child to appellant at the end of Christmas vacation in January 1985 because the child's behavior suddenly changed shortly before he was scheduled to return to Minnesota. He started wetting the bed, crying, and acting fearful about returning to his father, and respondent consulted professional help for him and, at advice of a therapist, enrolled him in elementary school in Houston. She also informed appellant by phone and letter that she was keeping the child in Texas for the time being because of the emotional and physical problems she had observed;

(27) That both homes would be an acceptable custodial home for the child and respondent's husband and appellant's companion have a warm relationship with the child;

(28) That the child wants to live with respondent;

(29) That there is substantial evidence of endangerment to the child's emotional health in the testimony by the only expert witness, who reported the child's strong preference to live with his mother and found the strength of the child's preference

significant because it expressed his underlying needs. The expert also felt that respondent is still the primary parent, based upon a strong bond formed between her and the child when she nurtured him during the first six years of his life. Although the child would get by in his father's care, the expert opined it would be at the cost of his normal emotional development and there would be a great risk that the child would run away, there would be a deficiency in the child's ability to trust another, and the child would have a superficial way of relating to adults, and there would be a negative effect on the child's self image and confidence;

(30) That sufficient changes have occurred in the circumstances of the child so that modification of the custody situation is necessary to serve the child's best interest;

(31) There is sufficient evidence that the child's environment with appellant sufficiently endangers his emotional health and impairs his emotional development to require a return of custody to respondent;

(32) Any theoretical harm which might be caused to the child by a disruption in returning him to his mother in Houston is outweighed by the advantage of the change. The child has spent substantial time with respondent and came close to residing with her on an extended basis in 1984 on the agreement of appellant.

We hold that the trial court's findings satisfy § 518.18(d)'s requirements. Although it is usually desirable to maintain the child in his or her current family unit to promote continuity and stability for the child, *Johnson v. Smith*, 374 N.W.2d 317, 321 (Minn.Ct.App.1985), *pet. for rev. denied,* (Minn. Nov. 18, 1985), this trial court properly found these considerations were

---

2. The court made no finding that appellant and respondent actually did come to an agreement. The only reference to the agreement is that appellant started a conversation about change of custody and respondent's brother was to draft the necessary documents. Appellant denies there was, at that time, a discussion of change of custody. He also states the documents prepared by respondent's brother were premature and he never saw them until they were brought into court.

3. Appellant, in his reply brief, contends he discharged this debt in bankruptcy, and denies any negotiations over this debt linking repayment with a change of custody. The trial court accepted respondent's version of the facts.

outweighed by factors calling for a change of custody to respondent. It is settled law that changes in child custody can and should be made if the circumstances are present.

## II.

### *Sufficiency of the Evidence*

■ The trial court in a dissolution case has broad discretion in custody matters. *Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn.1984). When examining the record, this court must review the evidence in the light most favorable to the trial court findings. *Rinker v. Rinker*, 358 N.W.2d 165, 167 (Minn.Ct.App.1984).

■ Appellant claims the evidence was insufficient to support the trial court's finding of a change in circumstances since the prior court order. Appellant describes the change in Andy's behavior as one isolated incident, a "temper tantrum," which he claims would not be unusual for a normal healthy child.

Respondent testified that two days before Andy was to return to his father,

> Andy started having some nightmares at night. And on the morning that he was to get up, he really didn't want to come out of his room and couldn't put his clothes on and the closer it got to the time to go to the airport, he started getting almost a physical sickness, and starting sobbing heavily. And becoming almost hysterical. And another thing that was very unusual is that what occurred, was that he started wetting the bed which is something that Andy had never done in his life.

Respondent's husband testified that Andy

> went into not a tantrum but, a sobbing frightened thing that he didn't want to go back to Minnesota to see his father. And it continued to the point of him having to go to his room and hiding, when the phone would ring. And he would think it was his father calling, he would run to his room and hide.

Only one expert witness, Dr. Sherman, testified. He gave extensive testimony re-garding Andy's fear of his father. Dr. Sherman had substantial contact with Andy and several opportunities to evaluate the child. He testified Andy's depressive fear and bad dreams showed that something severely upsetting was going on in the environment provided by appellant. Dr. Sherman said total separation from the mother would be potentially very harmful for Andy's maturing years into adulthood and that there would be a great chance of his running away if he remained with his father.

The trial court found Andy suffered sudden behavior changes severe enough to warrant a change of custody under Minn. Stat. § 518.18(d). The only expert testimony was unequivocal in that continued custody by appellant would have a deleterious effect on Andy's development. An appelate court should not disturb the trial court's order unless we are "left with a definite and firm conviction that a mistake has been made." *Corwin v. Corwin*, 366 N.W.2d 321, 325 (Minn.Ct.App.1985), citing *Hollom v. Carey*, 343 N.W.2d 701, 704 (Minn.Ct.App.1984). We hold the evidence supported the trial court's findings of substantial change in the circumstances.

## DECISION

The trial court made sufficient findings to support its conclusion that a change occurred in the circumstances of the child. The evidence supports those findings. We affirm the custody modification from appellant to respondent.

Affirmed.