486 A.2d 1204

**Laura L. ARNOLD**

v.

**William K. NAUGHTON.**

**No. 1008, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Jan. 17, 1985.

Paul A. Dorf, Baltimore (Michael P. Donnelly and Adelberg, Rudow, Dorf, Hendler & Sameth, Baltimore, on the brief), for appellant.

Thomas C. Codd, Severna Park (Downie D. Codd and Codd & Codd, Severna Park, on the brief), for appellee.

Argued before GILBERT, C.J., and WILNER and GETTY, JJ.

GETTY, Judge.

In present day society, public opinion polls, and the results thereof, cover a wide range of subjects. We are unaware that trial judges have ever been polled and requested to list judicial proceedings in the order of complexity. Were any such attempt made, one may safely predict that child custody-visitation battles would rank at or near the top. The present controversy, with the ever present emotional involvement of the actors, is no exception.

The February, 1980, divorce between Laura L. Arnold and William K. Naughton has spawned six hearings in the Circuit Court for Anne Arundel County and two appeals to this Court. The evidence has been thoroughly developed, including the testimony of the parties, social workers, therapists and psychiatrists. The decision that prompted this appeal is a well reasoned and thorough opinion crafted by Judge Lerner, of the Anne Arundel County Circuit Court, who presided throughout the various hearings.

Initially, we reiterate the role of an appellate court in reviewing the decision of the trial court herein.

"When the appellate court scrutinizes factual findings, the clearly erroneous standard of Rules 886 and 1086 applies. When the appellate court views the ultimate

conclusion of the chancellor founded upon sound legal principles and based upon sound legal principles that are not clearly erroneous, the chancellor's decision should be disturbed only if there has been a clear abuse of discretion." *Davis v. Davis*, 280 Md. 119, 372 A.2d 231 (1977), *cert. denied*, 434 U.S. 939, 98 S.Ct. 430, 54 L.Ed.2d 299.

## *Background*

Two female children were born to the parties; one whose date of birth is March 26, 1974, and the other born August 25, 1975. Custody of the children was awarded to the mother in the divorce decree; reasonable visitation was granted to the father. A prior separation agreement contained the same provisions for custody and visitation.

Both parties remarried following the February, 1980 divorce. In the latter part of 1981, friction developed between the parties surrounding the father's exercise of his visitation privileges. The incident that triggered the continuing battle between the parties took place at the mother's residence sometime in August, 1981. The younger child, who was nearly six at the time, was playing "Doctor" with her stepfather, Mr. Arnold. As part of the playful physical examination, she began to examine his genital area. When questioned by him, the young girl indicated that she and her natural father played the game in that manner. In the course of a subsequent investigation involving both the police and the Department of Social Services, both children were interviewed. The younger child recounted one occasion when her father rubbed her genital area while playing "Doctor." He stopped when she asked him what he was doing. The older child disclosed that her father called her bad names like "asshole" and "shit." The girl did not allege any physical involvement of a sexual nature with her father, but she confirmed her sister's version of the "Doctor" game and added that her father frequently walked around naked and came into the bathroom when the girls were taking a bath.

The father denied his daughters' accusations stating that the only occasion during which he touched the younger child's genital area was in the course of applying Desitin to counteract a rash that had developed on her body. This explanation was partially corroborated by the father's present wife (she also applied Desitin for a rash). Although polygraph results have not received scientific acceptance, *Akonom v. State*, 40 Md.App. 676, 394 A.2d 1213 (1978), the father submitted to a polygraph examination which indicated no deception on his part.

The trial judge had before him, either by written report or direct testimony, the following expert testimony:

Thomas Berg and Ms. Linda Blick of the Chesapeake Institute, the children's therapist and psychiatrist.

> *Conclusion*:
> Berg— No visitation until the girls were more adult and able to decide for themselves.
> Blick— No visitation until the father admitted his wrongdoing.

Dr. Ira Lourie, child psychiatrist.

> *Conclusion*: Strictly supervised visitation.

Biosexual Psychohormonal Clinic at Johns Hopkins Hospital—evaluation report of the father.

> *Conclusion*:
> Dr. Fred S. Berlin—No identifiable psychiatric condition suggesting a probability that the charges (child abuse) are correct.
> Dr. Albert W. Forrester—Visitation under close supervision.

Patricia Ross, Department of Social Services—investigation and interview with the children.

> *Conclusion*: Immediate resumption of visitation under controlled, limited circumstances.

Dr. T. Richard Saunders, Clinical Psychologist—examination of the father.

> *Conclusion*: Reasonable monitoring, or continual supervision of visitation.

After considering all of the testimony, reports, and applicable case law, the trial court determined that sexual abuse had not been established beyond a reasonable doubt and he entered the following Order:

WHEREFORE, it is this 16th day of July, 1984, by the Circuit Court for Anne Arundel County, sitting in Equity,

ORDERED, that the Defendant shall resume visitation, as hereinafter described, with his minor children.... Defendant's visitation with [the children] will be conducted at the Anne Arundel County Department of Social Services visitation facility and will be held in the presence of an appropriate member of the Department of Social Services staff—preferably a clinical psychologist. The visitation will be two hours in length and will occur every other week beginning with the week of August 27, 1984. Counsel for both Plaintiff and Defendant will make the necessary arrangements with the Department of Social Services to comply with this Order; and it is further

ORDERED, that the Department of Social Services provide this Court with monthly progress reports on the aforesaid visitation, pending further Order of this Court; and it is further

ORDERED, that the Defendant continue in therapy with Dr. Jacob Roth on a weekly basis, and that Dr. Roth provide this Court with monthly progress reports pending further Order of this Court; and it is further

ORDERED, that this matter be scheduled for review by this Court on November 7, 1984, at 9:15 A.M.; and it is further

ORDERED, that the Plaintiff, Laura L. Arnold, and the Defendant, William K. Naughton, each pay one-half of the costs of these proceedings.

The mother appealed and we reversed for the reason that the trial court should have applied the "clear and convincing evidence" standard rather than "beyond a reasonable

doubt" in deciding whether child abuse was established.[1] On remand, the trial court, considering the evidence previously adduced, found that child abuse was established by clear and convincing evidence. He then re-issued virtually the same structured visitation Order that followed his earlier opinion. The mother appealed for the second time.

### The Law

The mother raises three issues.

I Should a finding of child abuse against a parent seeking visitation constitute an "extraordinary circumstance" requiring forfeiture of visitation rights as a matter of law?

II Was the court clearly erroneous in ordering structured visitation between the parent found to have committed child abuse and his children?

III Should the parent seeking visitation bear the burden of proof on the issue of whether visitation will be detrimental to the best interests of the child?

We shall respond to the first two issues.

### I

Subsequent to the trial court's opinion in this case, Chapter 529, Acts of 1984, codified as Section 9–101 of the Family Law Article of the Maryland Code, has taken effect. The statute states:

(a) *Determination by court.*—In any custody or visitation proceeding, if the court has reasonable grounds to believe that a child has been abused or neglected by a party to the proceeding, the court shall determine whether abuse or neglect is likely to occur if custody or visitation rights are granted to the party.

(b) *Specific finding required.*—Unless the court specifically finds that there is no likelihood of further child abuse or neglect by the party, the court shall deny

---

1. *See Berkey v. Delia,* 287 Md. 302, 413 A.2d 170 (1980).

custody or visitation rights to that party, except that the court may approve a supervised visitation arrangement that assures the safety of the child. (1984, ch. 529, Section 2.)

 The effective date of the statute is October 1, 1984. Whether the statute is construed to be procedural or substantive we need not decide in resolving the issue presented.[2] The trial court specifically found "there is no evidence that the children will be harmed if structured visitation is ordered." Thus, the trial court's findings are consistent with the procedure mandated by the statute and with the legislative intent expressed therein. Furthermore, the statute makes clear that supervised visitation by a non-custodial parent found to have sexually abused a child may be approved where the safety of the child is assured. Clearly, visitation may be denied or conditionally approved. The statute, however, does not preclude all visitation as a matter of law. Every case must be considered on its own facts.

The mother contends that child abuse is an "extraordinary circumstance" that required the trial judge to deny visitation. She cites, in support thereof, *Radford v. Matczuk*, 223 Md. 483, 164 A.2d 904 (1960). *Radford* recognizes visitation as an important, natural and legal right, although not absolute. The Court stressed that the right must yield to the good of the child, but should not be denied in the absence of extraordinary circumstances.

Our courts have never defined what constitutes an "extraordinary circumstance" sufficient to deny all visitation. We need not fashion any such definition here. If, however, the Legislature had intended that any showing of child abuse foreclosed the right of the errant parent to future visitation, it could have so provided in enacting Sec. 9–101 of the Family Law Article. We believe it significant that

---

**2.** The trial court took note of the statute, but considered it to be prospective by reason of the effective date.

the Legislature did not adopt any ironclad rule, but deferred to the findings of the trial court on a case by case basis.

We hold, as to the first issue, that a finding of child abuse does not preclude *all* visitation as a matter of law.

## II

The trial court noted that the courts in Maryland have never denied *all* visitation to an errant parent. None of the reported cases, however, involved a finding of sexual child abuse. In deciding that structured visitation was appropriate, the trial court considered two decisions of this Court relevant to the test articulated in *Radford, supra.* In *Roberts v. Roberts,* 35 Md.App. 497, 371 A.2d 689 (1977), a mother lost custody when her children were found to be in a deplorable state and suffering from psychological problems attributable to extreme neglect. The alcoholic mother later sought visitation which the trial court denied. We reversed and remanded for reexamination as to visitation stating that the case did not appear to be the proper vehicle for such a unique holding.

The second case considered by the trial court was *Shapiro v. Shapiro,* 54 Md.App. 477, 458 A.2d 1257 (1983). The child involved therein expressed both hatred and great fear of his father based upon assaultive behavior toward the child's mother. The trial court denied visitation, based upon psychiatric testimony that visitation would be harmful. On appeal, we reversed and remanded to the trial court suggesting that limited, structured visitation was more appropriate.

Whether the facts of the present case are more or less egregious than the scenarios in *Roberts* and *Shapiro* was for the trial court, not an appellate tribunal, to decide. Additionally, the chancellor expressed reservations as to the objectivity of the two professionals, Berg and Blick, who rejected visitation. He said, "their hesitancy appeared more based on the girls' fears and the defendant's failure to admit guilt than on belief that abuse would recur." The

court also concluded that the girls' fears were predicated upon the hostilities between the parents and their belief that their father would take them from their mother, rather than a fear that abuse will recur.

Finally, the court stated:

"The circumstances of this case are simply not so extraordinary that it is a proper case for denying all visitation. Although defendant committed wrong in the past, there is no evidence that the children will be harmed if structured visitation is ordered. In addition, the defendant has exhibited to the Court many positive traits. He has shown that he loves his daughters and that he is willing to cooperate with the Court and other officials in order to obtain visitation. He has also successfully made a new family and provided for them financially. This Court finds that structured, limited visitation will be in the girls' best interests by assisting them to put the past events in perspective, and to develop a better relationship with their father while being in a safe setting."

■ Judge Lerner meticulously and thoroughly reviewed the evidence and the law before concluding that limited, structured visitation was proper. He had the opportunity to observe and evaluate the various witnesses. We hold that on the facts of this case the result he reached cannot be set aside as being clearly erroneous. We affirm.

The burden of proof issue, III, was neither raised nor decided below. We decline to address it. Md.Rule 1085.

JUDGMENT AFFIRMED.

COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.