392 Pa. Superior Ct. 137 (1990)
572 A.2d 730
S.H., Appellee,
v.
B.L.H., Appellant.
Supreme Court of Pennsylvania.
Argued January 9, 1990.
Filed March 27, 1990.
*139 Robert H. Reese, Jr., Lancaster, for appellant. (submitted)
John E. Huber, Lancaster, for appellee.
Before DEL SOLE, MONTEMURO and TAMILIA, JJ.
MONTEMURO, Judge:
This is an appeal from an order modifying custody of a minor child, A.H.. The parties to this action, appellant, B.L.H., and appellee, S.H., are the natural father and mother respectively of A.H. Appellant raises two issues on appeal: (1) whether the trial court abused its discretion in restricting appellant's contact with A.H. to limited periods of visitation subject to supervision by members of appellee's family; and (2) whether this case should be remanded to the trial court for additional testimony regarding the report and opinion of Ms. Maddi Jane Sobel, an investigator for the Children and Youth Social Service Agency.
A.H., born July 18, 1984, resided with appellant and appellee from A.H.'s birth until November, 1985, when the parties separated. A.H. has resided with appellee since November, 1985. In December of 1985, appellee filed a complaint for custody. Upon stipulation of counsel, an order was entered on January 21, 1986 establishing joint legal custody of A.H. by the parties and awarding physical custody to appellee. Appellant was awarded temporary physical custody on alternate weekends and alternate Wednesdays and holidays. In December, 1986, appellant *140 filed a petition to modify custody. On December 23, 1986, the court entered an order which modified the January 21, 1986 order by eliminating the Wednesday visits with appellant and extending the weekend visits by providing that A.H. would spend alternate Fridays with appellant.
In August, 1988, Appellee filed the instant complaint, seeking to modify the custody order because she believed that appellant was sexually abusing A.H. during his periods of temporary physical custody. After a pre-hearing conference, a temporary order was entered. This order terminated A.H.'s overnight visits with appellant and provided that appellant's periods of custody were to be supervised by either appellant's sister-in-law or appellee's brother. Following a full hearing, the court issued an order on February 24, 1989 which continued shared legal custody by appellant and appellee, with primary physical custody remaining with appellee. The order provided for periods of supervised visitation by appellant with A.H., with no allowance of overnight visits. Appellant filed this timely appeal on March 23, 1989.
Our paramount concern in this case, as in all custody determinations, is that the best interests of the child be served. Thus, our scope of review is broad. Lombardo v. Lombardo, 515 Pa. 139, 147, 527 A.2d 525, 529 (1987).
. . . [T]his broader power of review was never intended to mean that an appellate court is free to nullify the factfinding function of the hearing judge. It is a principle which runs through all our cases that the credibility of witnesses and the weight to be given to their testimony by reason of their character, intelligence, and knowledge of the subject can best be determined by the judge before whom they appear.
Id., quoting Commonwealth ex rel. Spriggs v. Carson, 470 Pa. 290, 295, 368 A.2d 635, 637 (1977). We are "empowered to determine whether the trial court's incontrovertible factual findings support the trial court's factual conclusions, but may not interfere with those conclusions unless they are unreasonable in light of the trial court's factual *141 findings . . .; and thus, represent a gross abuse of discretion,. . . (emphasis in original). Lombardo, supra 515 Pa. at 148, 527 A.2d at 529, quoting Robinson v. Robinson, 505 Pa. 226, 237, 478 A.2d 800, 806 (1984) (citations omitted).
Appellant argues that the trial court abused its discretion in deciding that appellant's contact with A.H. should be limited to supervised visits with no provisions for overnight visits. The gist of appellant's argument is that the trial court afforded too much weight to the testimony of his daughter A.H., appellee, and Drs. Tinker and March, the expert witnesses who testified on behalf of appellee; and insufficient weight to the testimony of appellant and appellant's sister-in-law. We disagree. The trial judge is in the best position to evaluate the sincerity, credibility, and demeanor of the witnesses, and thus, the weight to be given to their testimony.
In this case, the trial court heard a full day's worth of testimony. On the basis of all of the evidence, the court concluded that appellant had sexually abused A.H., and that this finding of abuse constituted a substantial change of circumstances to justify a reconsideration of the prior custody order, citing Kozlowski v. Kozlowski, 362 Pa.Super. 516, 520, 524 A.2d 995, 997 (1987); Espersen v. Davidow, 359 Pa.Super. 531, 535, 519 A.2d 479, 480 (1986).[1] The court based its conclusions on the following:
The Plaintiff [appellee] testified extensively concerning [A.H.'s] behavior after returning from visits with the Defendant [appellant]. According to the Plaintiff, [A.H.] would return from these visits with redness in her vaginal area and she would walk as though she had something *142 between her legs. In addition, [A.H.] would attempt to pull her pants away from her vaginal area. When the Plaintiff would ask [A.H.] why she was walking in the manner described above, [A.H.] would reply that "it hurt." [A.H.] also experienced difficulty falling asleep after visits with the Defendant. The Plaintiff testified that on the first few nights after [A.H.] returned from these visits, she would not go to sleep unless the Plaintiff held her.
In the beginning of 1986, the Plaintiff began to observe [A.H.] attempting to insert various items into her vagina. In addition, [A.H.] began wetting her pants after returning from visits with Defendant. On occasion, [A.H.] has told the Plaintiff that the Defendant touched her vagina and her rectum and that he kissed her on the vagina. Also, [A.H.] has told the Plaintiff that the Defendant would "get his penis out" at her.
Although [A.H.'s] babysitter, Beth Liggins, did not testify, the parties stipulated that had she testified she would have testified as to the following: (1) that she has babysat [A.H.] since 1985 and continues to babysit her; (2) she runs a day care center on Main Street, Mount Joy, called Kids' Corner, and is a licensed day care mother; (3) that [A.H.] has stated in her presence that the Defendant hurts her; and (4) that she has observed [A.H.] attempting to insert things into her vagina.
The Plaintiff's mother, A.J.S., testified that in late 1985 or early 1986, she observed [A.H.] walking as though she had something between her legs. Mrs. S. also testified concerning a telephone conversation she had with [A.H.] on February 20, 1988 after [A.H.] had been with her father for the evening. According to Mrs. S., during that telephone conversation [A.H.] told her that her butt hurt. When Mrs. S. asked [A.H.] why her butt hurt, [A.H.] replied "because it has yucky in it." Mrs. S. then asked [A.H.] what yucky was and [A.H.] replied "yes, my daddy hurt me." When Mrs. S. asked [A.H.] how her daddy *143 hurt her, [A.H.] answered that he hurt her with his penis. (Citations to original record omitted).
Trial Court Opinion at 5-7. The trial court also considered expert testimony from two clinical psychologists, Dr. Brian March, who had seen A.H. sixteen times in his professional capacity, and Dr. Dorris Tinker, retained pursuant to a court-ordered evaluation. Without objection, both experts testified that it was their clinical impression that appellant had sexually abused A.H.. Contrary to appellant's assertions, Dr. Tinker met with appellant as part of her evaluation of the case. The trial court heard testimony from appellant that he had never sexually abused A.H.; testimony from appellant's mother that she had never observed any sexual misconduct on appellant's part, and testimony from appellant's sister-in-law. Finally, the court examined A.H. in chambers, where she stated that appellant "hurt" her. Upon review of the entire record, we must conclude that the trial court's factual findings are supported by competent evidence, and that the court's factual conclusion that appellant sexually abused A.H. is reasonable in light of these factual findings. The trial court did not abuse its discretion in concluding that the abuse constituted a substantial change in circumstances and that the best interests of the child warranted modification of the prior custody order.
We now must ascertain whether the modified order provides for unnecessarily restrictive contact between appellant and A.H. with regard to the length of the visits, the need for supervision, and the individuals who may act as supervisors. The modified order provides that appellant and appellee shall share legal custody of A.H. so that each shall participate in major decisions concerning A.H.'s medical, religious, and educational needs. The order grants primary physical custody of A.H. to appellee, with appellant having supervised visitation with A.H. as follows: every Wednesday afternoon between 1:00 and 4:00 p.m. at A.H.'s day care center, under the supervision of Beth Liggins, the operator of the center; on alternate weekends, for eight *144 hours on Sunday of the first alternate weekend, and for four hours on Saturday and five hours on Sunday of the second alternate weekend. The weekend supervision is to be by A.H.'s maternal grandparents, A.H.'s maternal uncle and his wife, A.H.'s maternal aunt and her husband, or appellee and her fiance. In addition, appellant can visit A.H., along with two members of appellant's immediate family, in appellee's home, provided he gives two weeks written notice of the day on which he intends to visit. These additional mutually arranged visits are to be supervised by appellee and her fiance.
We find that the trial court did not err in finding that it is in A.H.'s best interest to continue to have contact with appellant, but that without supervision A.H.'s visits with appellant would have a detrimental impact on A.H. in that appellant would continue to sexually abuse her. In light of appellant's conduct and the effect appellant's behavior has had on A.H., the modified order provides for ample periods of visitation. The failure to permit overnight visits serves A.H.'s best interests. According to the testimony, the sexual contact was most frequent when A.H. stayed overnight at the home of appellant's parents, with whom appellant lives. Likewise, the failure to choose members of appellant's family as supervisors serves A.H.'s best interests. The sexual abuse occurred while A.H. visited with appellant at his parents' home, where seven people live. Appellant's mother testified that appellant was rarely alone with A.H. because "there's always somebody in and out." N.T. January 19, 1989 at 177. Despite the supposed continual presence of members of appellant's family, appellant managed to abuse A.H., unnoticed by any member of his family. The trial court did not err in not choosing any members of appellant's family as supervisors. It is reasonable to assume that the day care operator and the selected members of appellee's family will maintain a more careful vigilance over appellant's conduct toward A.H. than appellant's family members have in the past. Members of appellant's *145 family who want to maintain and develop their relationship with A.H. will be able to do so under the modified order, as the order permits them to visit A.H. provided appellant gives two weeks written notice to appellee.
We find that the trial court carefully and comprehensively analyzed all of the evidence in fashioning the modified custody order. We hold that the custody order serves the best interests of A.H.
Appellant also contends that the case should be remanded for additional testimony regarding the report and opinion of Maddi Jane Sobel, an evaluator from the Children and Youth Social Service Agency. Since appellant was well aware of Ms. Sobel's report, dated February 18, 1988, at the time of the hearing on January 19, 1989, and failed to offer Ms. Sobel's report as evidence before the trial court, appellant cannot now attempt to introduce or rely upon the report as evidence before this Court. Pa.R.A.P. 1921; see Commonwealth v. DeSanto, 379 Pa.Super. 435, 550 A.2d 236 (1988); Commonwealth v. McClucas, 378 Pa.Super. 202, 548 A.2d 573 (1988); Marine Bank v. Huhta, 279 Pa.Super. 130, 420 A.2d 1066 (1980); Gee v. Eberle, 279 Pa.Super. 101, 420 A.2d 1050 (1980). Contrary to appellant's assertions, the record from the trial court is not inadequate or incomplete. The trial court heard testimony from two clinical psychologists, appellee, appellee's mother, appellee's brother, appellee's sister, appellee's fiance, appellant, appellant's mother, and appellant's sister-in-law. The court also examined A.H. in chambers. The testimony and opinions of all of these people provided the court with a sufficient basis upon which to render its decision. In addition, appellant's assertion that Ms. Sobel was the only expert who interviewed appellant is an outright misstatement of the truth, as Dr. Tinker, retained pursuant to the court-ordered evaluation, met with appellant in the presence of A.H. as part of the evaluation. We find that appellant has waived his right to introduce the report of Ms. Sobel.
*146 For the foregoing reasons, we affirm the modified custody order.
Order affirmed.
NOTES
[1] Although neither party challenges the propriety of the trial court's decision to reconsider the custody order, we note that the trial court need not have found that a change in circumstances existed as a prerequisite for entertaining the petition to modify the custody order. See Martin v. Martin, 386 Pa.Super. 328, 332, 562 A.2d 1389, 1391 (1989) ("[P]etitions for modification of custody orders may be filed at any time, and in all such cases the court hearing the petition must consider the best interests of the child or children."); Hutchinson v. Hutchinson, 379 Pa.Super. 247, 251, 549 A.2d 999, 1001 (1988) ("[C]hanged circumstances is incorporated into the review of best interest instead of being a prerequisite for undertaking that review.").