438 S.E.2d 521

**MARY D., Petitioner,**

v.

**Honorable Clarence WATT, Judge of the
Circuit Court of Putnam County,
and George D., Respondents.**

**No. 20453.**

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 14, 1992.

Decided May 29, 1992.

Maureen Conley, Legal Aid Soc. of Charleston, Charleston, for petitioner.

J. Stephen Max, Charleston, for Respondent, George D.

McHUGH, Chief Justice:

This original proceeding is before the Court upon a petition for a writ of prohibition by Mary D.[1] The respondents are Clarence Watt, Judge of the Circuit Court of Putnam County, and George D. The petitioner seeks to prohibit enforcement of the September 11, 1991 order of the circuit court, which, in effect, granted the respondent, George D., visitation with his and Mary D.'s children.

I

In October, 1989, the petitioner filed a complaint seeking a divorce from George D., based upon cruel and inhuman treatment and irreconcilable differences.[2] Three children were born to the parties: Sara, who, at the time of the filing of the petition in this Court, was age 12; Susan, age 9; and Jesse, age 6.

The children's pediatrician, Dr. Joan Phillips, discovered that the girls, Sara and Susan, had been sexually abused. Susan named George D. as the perpetrator of such abuse.

In July, 1990, George D. was indicted in the Circuit Court of Putnam County on eight counts, consisting of sexual abuse, sexual assault, and incest. Prior to the indictment, George D. was permitted visitation with the children.

Following trial on the criminal charges in April, 1991, the respondent was acquitted of all eight charges.[3] Accordingly, subsequent to his acquittal, George D. filed a petition with the family law master requesting visitation with the three children. The family law master granted George D.'s request in an *ex parte* order, but two days later, that order was reversed by the family law master.[4] The family law master then ordered that an evidentiary hearing be conducted regarding visitation.

In June, 1991, the petitioner filed a motion requesting that the circuit court appoint a guardian *ad litem* and transfer the hearing on the custody and visitation issues from the family law master to the circuit court. The circuit court appointed a guardian *ad litem*, but denied the petitioner's request to hear the custody and visitation issues. The appointed guardian *ad. litem* is Rosalee Juba–Plumbley.

A notice was sent to the petitioner setting the date of the hearing for August 14, 1991.

1. Consistent with our practice in cases involving sensitive matters, we use initials rather than full names. *See In re Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989) (citing cases).

2. *See W.Va.Code*, 48–2–4(a)(4) & (10) [1981].

3. Due to an irregularity in the original indictment procedure, George D. was indicted again on the same eight charges in October, 1990. Consequently, the trial was delayed until April, 1991.

4. The family law master's reversal was based upon *W.Va.Code*, 48–2–13(e)(1) [1986], which re-

quires a showing that immediate and irreparable injury will result if the *ex parte* relief is *not* granted. That section provides, in part:

(e) An ex parte order granting all or part of the relief provided for in this section may be granted without written or oral notice to the adverse party if:

(1) It appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or such party's attorney can be heard in opposition.

At that hearing, the petitioner requested a continuance, but her request was denied. The family law master heard the testimony of David Wilburn, a psychologist. Both Wilburn and the guardian *ad litem,* Rosalee Juba–Plumbley, recommended that the respondent, George D., be permitted supervised visitation.

On August 16, 1991, the family law master entered an order recommending supervised visitation and that the petitioner, the respondent, and the children should all undergo an independent psychiatric evaluation.[5]

The petitioner filed a motion to stay the order in the circuit court. The circuit court heard the parties' arguments on the motion and recommended that further argument on the motion be scheduled for a later date, specifically, October 3, 1991.[6] The circuit court, by *ore tenus* order, refused to stay the family law master's order permitting visitation by George D.

Before the scheduled October 3, 1991 hearing in circuit court, specifically, on September 19, 1991, the petitioner filed this writ of prohibition in this Court, seeking to prohibit visitation by the respondent, George D. At the initial oral argument, which was held on October 2, 1991, petitioner's counsel represented that the children were to be admitted to the Pines Treatment Center in Portsmouth, Virginia, beginning October 10, 1991. Counsel for the petitioner then moved that this Court continue the matter until the treatment program could be completed.

This Court, in an order prepared on October 4, 1991, issued a stay for 75 days and reset submission of this case for January 14, 1992.[7]

As of the submission of this case on January 14, 1992, this Court was made aware that the children were still at the Pines Treatment Center.[8]

## II

The petitioner primarily contends that under *W.Va.Code,* 48A–4–1(i) [1991], the circuit court was confronted with "good cause" for revoking referral of the custody/visitation matter to the family law master.

*W.Va.Code,* 48A–4–1(i) [1991] provides that a circuit court may retain jurisdiction over certain matters, including child custody and visitation for "good cause," or "if the matter will be more expeditiously and inexpensively heard by the circuit judge without substantially affecting the rights of the parties[.]"

In support of her contention, the petitioner cites the fact that the respondent, Judge Watt, who presided over the *criminal trial* of George D., had already heard extensive testimony from the children and experts that the children were sexually abused, and accordingly, could make a finding of abuse in the civil divorce case.

The respondent merely contends that there was no abuse on the part of the circuit court because the very purpose of the family law master system is to allow such proceedings to take place before it, and not the circuit court.

---

5. The family law master's order specified that the supervised visitation shall be conducted in a therapeutic setting and it also specified the psychologist, the location, and the frequency of such visitation.

6. At the time of the petitioner's motion to stay, the circuit court was in the midst of a criminal trial.

7. On October 9, 1991, the respondent, George D., petitioned for a rehearing regarding the October 4, 1991 order. This Court denied that petition.

On November 25, 1991, the respondent moved to modify the October 4, 1991 order, so as to allow him to communicate with the Pines Treat-ment Center at the Center's discretion and without the prior permission of the petitioner. This Court granted that relief.

8. Following the January 14, 1992 submission of this case, this Court was notified by the petitioner herself that the children would be at Pines until February 19, 1992. On February 25, 1992, the petitioner, by letter, notified this Court that she and the children have moved to Florida. On March 30, 1992, the respondent, George D., filed a "motion to proceed," alleging that the petitioner has given custody of the children to the Division of Human Services without notifying him, and requesting that this Court permit the family law master and/or the circuit court to hear the divorce matter but not the custody or visitation issue.

## A

Before we address the petitioner's contention that the circuit court abused its discretion by not revoking referral of certain matters to the family law master, we must first dispose of a matter which is constantly raised by the petitioner.

Throughout her pleadings filed in this Court, the petitioner contends that the circuit court has ignored the needs of the children by refusing to follow the procedures outlined in *W.Va.Code*, 49-6-1, *et seq.* Those procedures pertain to the processing of civil cases involving child neglect and child abuse.[9]

■ However, this is *not* a proceeding brought under chapter 49 of the *West Virginia Code*. *W.Va.Code*, 49-6-1 [1977] makes it very clear as to the procedures that are required for presenting a petition where it is alleged that a child is being abused or neglected. *W.Va.Code*, 49-6-1(a) [1977] provides, in part: "If the state department [of human services] or a reputable person believes that a child is neglected or abused, the department or the person may present a petition setting forth the facts *to the circuit court* in the county in which the child resides[.]" (emphasis supplied) Accordingly, the petition before *this* Court is not sufficient to proceed under chapter 49, and there is no authority for this Court, by its original jurisdiction power, to make a "finding" of sexual abuse by the children's father upon which the

termination of his parental rights may be based.[10]

## B

With respect to the question of whether or not there was an abuse of discretion on the part of the circuit court in not deciding the custody/visitation matter and allowing the family law master to decide such, this Court does not have before it the record of the criminal trial so as to determine if there was enough evidence to believe that "good cause" existed for the circuit court to revoke referral of that matter to the family law master. Therefore, the *specific* relief sought by the petitioner, that the circuit court abused its discretion in deciding the revocation issue, cannot be granted by this Court. However, the facts in this case raise troubling prospects which, if not properly addressed under the guidance of clearly set forth principles, may lead to serious problems for the welfare of children in this state.

■ As quoted previously, *W.Va.Code*, 48A-4-1 [1991] provides that a circuit court may retain jurisdiction over certain matters if there exists "good cause," or "if the matter will be more expeditiously and inexpensively heard by the circuit judge." This Court has recognized that "[i]t is clear that the powers possessed by a family law master are restricted to those conferred by statute." *Segal v. Beard*, 181 W.Va. 92, 95, 380 S.E.2d 444, 447 (1989). We believe that because an

---

**9.** The petitioner also asserts that the proceeding before this Court is brought pursuant to *W.Va. Code*, 49-6-1, *et seq.*

**10.** The petitioner also alleges that the prosecutor never filed an action for termination of parental or custodial rights. *W.Va.Code*, 49-6-10 [1984] imposes a duty upon a prosecutor to cooperate with the efforts of one seeking relief under *W.Va. Code*, 49-6-1, *et seq.* That section provides:

It shall be the duty of every prosecuting attorney to fully and promptly cooperate with persons seeking to apply for relief under the provisions of this article in all cases of suspected child abuse and neglect, to promptly prepare applications and petitions for relief requested by such persons, to investigate reported cases of suspected child abuse and neglect for possible criminal activity and to report at least annually to the grand jury regarding the discharge of his or her duties with respect thereto.

In this case, though, we are not confronted with the question as to why the prosecutor failed or decided not to participate in the filing of a petition under *W.Va.Code*, 49-6-1, *et seq.* We note that the provisions of chapter 49 of the *West Virginia Code* may undergo comprehensive revision pursuant to S.Con.Res. 16 and H.Con.Res. 21, adopted March 6, 1992. *See Journal of the House of Delegates* 297–99 (Feb. 4, 1992). We further point out that in its most recent session, the legislature amended various provisions of chapters 48 and 49, as well as other sections of the *West Virginia Code*, pertaining to family protection, which, had they been in effect during the pertinent events in this case, may have had some bearing herein.

We also note that *W.Va.Code*, 49-5-4 [1975] provides, in part: "A person under the age of eighteen years who appears before the circuit court in any capacity shall be deemed to be a ward of the court and protected accordingly."

allegation of sexual abuse of a child involved in a divorce proceeding is extraordinary, such allegation would constitute "good cause" or grounds for a more expeditious resolution by the circuit court as contemplated by *W.Va.Code*, 48A–4–1(i) [1991], and accordingly, custody and visitation matters relating thereto may be retained by the circuit court, or, if already referred to a family law master, such referral may be revoked.[11]

Permitting retention by the circuit court in such circumstances is especially appropriate due to the harm to a child caused by the delay of an appeal to the circuit court as well as by having to repeat the same testimony in more than one proceeding. The unfortunate realities of cases where a child is abused and the harm incurred by delays relating to the court system have recently been recognized by this Court. "Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security." Syl. pt. 1, in part, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991).

### III

It has been established that "[s]exual abuse of a child by a parent or by others while the child is under the parent's care or control may result in termination or restriction of visitation rights." *Child Custody & Visitation Law and Practice* § 16.10[1] (J. McCahey gen. ed. 1991). On the other hand,

some "courts have allowed visitation between a non-custodial parent and a child to continue even where there is evidence that the child has been sexually abused. Under such circumstances, courts often will continue to allow visitation, but will impose strict supervision." *Id.* (footnote omitted) "Generally, the decision as to whether visitation should be denied or restricted [under these circumstances] is exclusively that of the court." *Id.*

In *Beckham v. O'Brien*, 176 Ga.App. 518, 336 S.E.2d 375 (1985), the Court of Appeals of Georgia reversed a lower court's ruling which found a mother in willful contempt for violating an order allowing visitation by the father. There, the father had been indicted for sexually molesting the parties' daughter. In reversing the lower court's order, the appeals court weighed the emotional and psychological aspects of the child's well being against the principle that the father had not been proven guilty in a criminal sense.

While we recognize that the father has not been convicted of molesting this child, we do not see this case as simply an angry mother pointing accusingly at her ex-husband in order to avoid his visitation rights. The father has been *indicted* by a grand jury.... For an indictment to be issued under this jurisdiction, the grand jury must be persuaded that there is probable cause to believe the party is guilty....

Upon reviewing the record and the transcript of the contempt hearing, we conclude that the trial court abused its discre-

---

11. We recently addressed the extraordinary nature of cases involving allegations of sexual abuse of children: "We believe that cases involving sexually abused children are unique. Given the often elusive nature of the evidence in sexual abuse allegations, such cases require a certain attention to detail that may not be as important in other maltreatment cases." *Jennifer A. v. Burgess*, No. 21009, at 6 (May 15, 1992) (unpublished order).

It has been observed by one commentator, in addressing allegations of sexual abuse with respect to visitation, that

[t]he harm [of sexual abuse] is sufficiently grave that courts should award temporary custody to the nonabusing parent whenever there is *reason to believe* sexual abuse has occurred or is likely to occur.

While the evidence needed to establish reasonable belief comes from many sources, it is important to remember that child sexual abuse

is often very difficult to prove [, so] courts should not place a heavy burden of proof on the petitioner. The threat to the child's welfare is so high if abuse is occurring that temporary custody should be granted when the petitioner raises 'questions going to the merits so serious, substantial, difficult and doubtful, as to make fair ground for litigation and thus for more deliberate investigation.'

... Bearing in mind the effects of sexual abuse, and the interim nature of temporary custody, the court should err in the direction of protecting sexually abused children. That is, improvidently granting temporary custody is less likely to harm a child than improvidently denying such custody.

J. Myers, *Allegations of Child Sexual Abuse in Custody and Visitation Litigation: Recommendations for Improved Fact Finding and Child Protection*, 28 J.Fam.L. 1, 37 (1989) (emphasis supplied) (internal footnote and citation omitted).

tion in ordering that the father be allowed to exercise visitation rights, albeit 'supervised visitation' rights, while the criminal charge is pending.

336 S.E.2d at 377 (emphasis in original).

We recognize that in this case, unlike *Beckham,* the father has already been tried on the charges of sexual abuse and acquitted. However, being found "not guilty" under the criminal standard of "beyond a reasonable doubt" will not necessarily ease the emotional and psychological trauma, if any, suffered by the children if visitation, even if supervised, were to continue. Obviously, in a civil case, the standard would not be as stringent. Accordingly, this matter must be explored further by the circuit court.

This is not to imply that supervised visitation is not a reasonable course of action. Often, it is the most attractive option available. *See Arnold v. Naughton,* 61 Md.App. 427, 486 A.2d 1204 *cert. denied,* 303 Md. 295, 493 A.2d 349 (1985); *Corwin v. Corwin,* 366 N.W.2d 321 (Minn.Ct.App.1985). On the other hand, it has been recognized that "[t]he only purpose served by supervision of visits is to allay anxiety. Such anxiety could be reduced with counseling of all parties so that visits could become unsupervised, flexible, and productive of the natural relationship that can exist between children and a noncustodial parent." *In re Luke G.,* 40 Conn.Supp. 316, 498 A.2d 1054, 1059 (1985). In *Luke G.,* there was no evidence that the children's father was a threat to their physical or emotional safety. *Id.* at 1059. In this case, that possibility exists as there may be such evidence. Obviously, the question of the propriety of supervised visitation would differ from case to case.

In *Mallory v. Mallory,* 207 Conn. 48, 539 A.2d 995 (1988), the Supreme Court of Connecticut held that "the normal civil standard of proof, which is a fair preponderance of the evidence, is applicable in child custody hearings in which there are allegations that a parent has sexually abused his child, at least where that parent retains some visitation rights[.]" *Id.* at 998. In *Mallory,* the trial court had ordered that the father, against whom there was evidence that he had sexually abused his daughter, was permitted four

hours of visitation per week under the supervision of the Superior Court's Family Relations Division. This portion of the trial court's order was affirmed by the Connecticut Supreme Court by upholding application of the preponderance of the evidence standard.

It has also been recognized that prior to even being considered for supervised visitation, a court may order that the sexually abusive parent enter a treatment program. *See S.G.K. v. K.S.K.,* 374 N.W.2d 525 (Minn. Ct.App.1985).

In *D.L.M. v. L.E.M.,* 788 S.W.2d 753 (Mo. Ct.App.1990), it was held that where the evidence demonstrated that the children manifested physical signs of sexual abuse by their father, then supervised visitation was proper under applicable statutory provisions. Similarly, in *S.H. v. B.L.H.,* 392 Pa.Super. 137, 572 A.2d 730 (1990), the court affirmed a trial court's ruling that evidence of sexual abuse by a father of his child warranted modification of a custody order to allow only supervised visitation.

■ The commonality of the cases discussed above is that they all involve a determination by the court or referee who presided over the divorce or family law issues as to whether the child had been sexually abused. We believe that in this case, a similar finding should be made in the family law proceeding prior to ordering supervised visitation if there is evidence that supports such a finding.

*W.Va.Code,* 48–2–15(b)(1) [1991] provides, in part:

(b) Upon ordering the annulment of a marriage or a divorce or granting of decree of separate maintenance, the court may further order all or any part of the following relief:

(1) The court may provide for the custody of minor children of the parties, subject to such rights of visitation, both in and out of the residence of the custodial parent or other person or persons having custody, *as*

*may be appropriate under the circumstances.*

(emphasis supplied)

■ We believe that this statutory provision contemplates that a court may order *supervised* visitation if there is evidence that one of the parents has sexually abused a child involved.[12] In finding that a child has been sexually abused and that supervised visitation is proper, the petitioner urges this Court to adopt a standard of "clear and convincing" proof as used in proceedings to terminate parental rights under *W.Va.Code,* 49–6–2 [1984].

In syllabus point 6 to *In re Willis,* 157 W.Va. 225, 207 S.E.2d 129 (1973), this Court held: "The standard of proof required to support a court order *limiting* or terminating parental rights to the custody of minor children is clear, cogent and convincing proof." (emphasis supplied) *See Kenneth B. v. Elmer Jimmy S.,* 184 W.Va. 49, 53, 399 S.E.2d 192, 196 (1990); syl. pt. 1, *In re Adoption of Schoffstall,* 179 W.Va. 350, 368 S.E.2d 720 (1988); *Nancy Viola R. v. Randolph W.,* 177 W.Va. 710, 715, 356 S.E.2d 464, 469 (1987).

■ Although the petitioner contends that clear and convincing proof should be the standard in this context, we do not believe that the standard should be so stringent. Rather, because termination of parental rights is *not* involved, but only supervised visitation, we believe that *credible evidence* of such sexual abuse allegations is all that is necessary for a family law master or circuit court to order supervised visitation. Furthermore, the risk of harm of supervised visitation or the deprivation of any visitation to the parent who allegedly committed the abuse should be weighed against the risk of harm of supervised visitation to the child.

■ Where a family law master or circuit court is confronted with a case where a pre-vious criminal proceeding was held involving the question of whether one parent sexually abused a child, this issue must be addressed in the *civil* proceeding. In other words, the family law master and circuit court should not just accept the criminal verdict of acquittal as a basis for ordering visitation, even if it is supervised visitation. Rather, because the visitation matter stems from a civil *divorce* proceeding, the family law master and circuit court should approach it with a view toward resolving the best interests of the parties involved in the civil proceeding.

■ Accordingly, we hold that prior to ordering supervised visitation pursuant to *W.Va.Code,* 48–2–15(b)(1) [1991], if there is an allegation involving whether one of the parents sexually abused the child involved, a family law master or circuit court must make a finding with respect to whether that parent sexually abused the child. A finding that sexual abuse has occurred must be supported by credible evidence. The family law master or circuit court may condition such supervised visitation upon the offending parent seeking treatment. Prior to ordering supervised visitation, the family law master or circuit court should weigh the risk of harm of such visitation or the deprivation of any visitation to the parent who allegedly committed the sexual abuse against the risk of harm of such visitation to the child. Furthermore, the family law master or circuit court should ascertain that the allegation of sexual abuse under these circumstances is meritorious and if made in the context of the family law proceeding, that such allegation is reported to the appropriate law enforcement agency or prosecutor for the county in which the alleged sexual abuse took place. *Cf. W.Va. Code,* 49–6A–5 [1984] (local state department child protective service agency shall forward copy of report of child abuse and neglect to appropriate law enforcement agency, prosecuting attorney, coroner, or medical examin-

---

12. Some states have legislative authority which specifically provides for the ordering of supervised visitation. For example, Minn.Stat.Ann. § 518.175(1) (West 1990) provides, in part: "If the court finds, after a hearing, that visitation is likely to endanger the child's physical or emotional health or impair the child's emotional development, the court shall restrict visitation by the noncustodial parent as to time, place, duration, or *supervision* ... as the circumstances warrant." (emphasis supplied) *See also* Mo. Ann.Stat. § 452.400(2) (Vernon 1986).

However, as stated above, we believe that the general provisions concerning visitation as contained in *W.Va.Code,* 48–2–15(b)(1) [1991] authorize a court to order supervised visitation.

er). Finally, if the sexual abuse allegations were previously tried in a criminal case, then the transcript of the criminal case may be utilized to determine whether credible evidence exists to support the allegations. If the transcript is utilized to determine that credible evidence does or does not exist, the transcript must be made a part of the record in the civil proceeding so that this Court, where appropriate, may adequately review the civil record to conclude whether the lower court abused its discretion. Such utilization will not only promote the efficient administration of justice, but it will also spare the child witness from having to testify to traumatic matters on more than one occasion.[13]

However, where supervised visitation is permitted, it is of paramount importance that the child's best interests be served by not only what the *court* deems is in his or best interests, but also, that the child feels safe when such visitation is exercised by the noncustodial parent. Accordingly, the person who supervises such visitation must be one with whom the *child* is comfortable and feels safe. It is not enough that the person who is appointed to supervise visitation is in the best interests of the child from the court's standpoint, which would merely assure that no further abuse will occur during such visitation. Rather, the fears of the child must be allayed as well so that the child may be protected not only from further physical harm, but also further psychological harm. Therefore, we hold that where supervised visitation is ordered pursuant to *W.Va.Code*, 48–2–15(b)(1) [1991], the best interests of a child include determining that the child is safe from the fear of emotional and psychological trauma which he or she may experience. The person(s) appointed to supervise the visitation should have had some prior contact with the child so that the child is sufficiently familiar with and trusting of that person in order for the child to have secure

feelings and so that the visitation is not harmful to his or her emotional well being. Such a determination should be incorporated as a finding of the family law master or circuit court.

## IV

In this case, there was no record developed on the question of whether, by credible evidence, the respondent, George D., sexually abused the children. Therefore, such a record must be developed. With respect to whether the circuit court should have revoked referral of the custody/visitation matter to the family law master, because this Court does not have before it the record of the proceedings of either the criminal trial or the hearing on the custody/visitation issue, this matter must be reviewed further by the circuit court so that that court, consistent with this opinion, may determine whether good cause existed for it to retain jurisdiction over the custody/visitation matters, or if retaining jurisdiction over those matters would result in a more expeditious resolution. However, as enunciated herein, the circuit court may utilize the transcript from the criminal proceeding to determine whether credible evidence exists, which is especially appropriate in this case because the same circuit judge presided over both the criminal and civil proceedings. Moreover, with respect to whether there was an abuse of discretion in ordering all parties (including the children) to undergo psychiatric evaluations, this Court cannot conclude that error is present because the record is inadequate in this respect as well. This, too, is a matter for further review by the circuit court.[14]

Therefore, the petitioner's writ of prohibition is granted as moulded.

Writ granted as moulded.

NEELY, Justice, dissenting:

In this case, the majority opinion makes a simple process into a complicated one in

---

13. Moreover, the inherent constitutional safeguards of a criminal proceeding will ensure that the defendant/accused parent will enjoy more protection with respect to what evidence will ultimately go in the civil record.

14. This case illustrates why prohibition is a difficult remedy due to the absence of an adequately developed record. However, in light of our holding, future cases with similar facts should have an adequately developed record so that, if appropriate, this Court may conclusively determine whether there has been an abuse of discretion.

hopes that no one will see what is really going on. Syllabus Points 2 and 3 set up numerous hoops for the circuit court to jump through when the case is remanded to him. The majority opinion states:

> [I]f there is an allegation involving whether one of the parents sexually abused the child involved, a family law master or circuit court must make a finding with respect to whether that parent sexually abused the child.... if the sexual abuse allegations were previously tried in a criminal case, then the transcript of the criminal case may be utilized to determine whether credible evidence exists to support the allegation. If the transcript is utilized to determine that credible evidence does or does not exist, the transcript must be made a part of the record in the civil proceedings so that this Court, where appropriate, may adequately review the civil record to conclude whether the lower court abused its discretion.

If this case had taken place in the New York Supreme Court where hundreds of judges decide thousands of cases each month, the majority's opinion would have been warranted. However, this case and the related criminal case both took place in the Circuit Court of Putnam County with Judge Watt presiding. Judge Watt has been involved in this case from start to finish and he heard all of the evidence at the criminal trial in which George D. was *acquitted*. Only after hearing all of this evidence did Judge Watt allow Mr. D. *supervised* visitation. The majority needlessly sets more hurdles in front of George D. after he has been acquitted of all sexual abuse charges and after he has passed a lie detector test administered by the state police. It is a mindless exercise in teaching one's grandmother to suck eggs to point out to an experienced trial judge that the civil standard of proof is lower than the criminal standard of proof. This Court has no reasonable grounds from which to infer that the respondent is such a simpleton that were there the least doubt in his mind concerning the children's safety he would allow *any* visitation, supervised or unsupervised.

We now have a system in which a female parent need only scream child abuse in a loud voice to keep the male parent from seeing a child. Indeed, sexual abuse these days seems to arouse all the hysteria that was associated with witchcraft in yesteryear. In fact, it has even spawned a witch-hunting-esque cottage industry, to-wit badly trained, ideological rape trauma experts, rape counselors, bachelor level pseudo-psychologists, social activists, and other assorted species of jacklegs. I am a firm believer that the best interests of the child are paramount, but that does not mean never allowing a father to see his children when the evidence preponderates on his behalf even though, like an accused witch, he cannot clear himself beyond any shadow of a doubt. Continuous yelling and screaming of an accusation does not make that accusation any more true.