455 S.E.2d 565

**BELINDA KAY C., Plaintiff Below, Appellant,**

v.

**JOHN DAVID C., Defendant Below, Appellee.**

No. 22334.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1995.

Decided Feb. 17, 1995.

H.L. Kirkpatrick, III, Ashworth & Kirkpatrick, Beckley, for appellant.

John David Cobb, pro se.

PER CURIAM:

In this domestic case, the appellant, Brenda Kay C., claims that the Circuit Court of Raleigh County erred in granting the appellee, her former husband, John David C., unsupervised visitation with the parties' two children. The appellant claims that the appellee has exhibited violent behavior toward the children and that, under the circumstances, the trial court should have required that any visitation with the children be supervised. We agree and, therefore, remand this matter to the circuit court with directions that visitation be at least minimally supervised.

The marriage of the parties in this matter was turbulent, and during it each obtained violence-related warrants against the other. At length, they were divorced. At one time during the pendency of the divorce proceeding, over twenty warrants and cross-warrants were on file in the Magistrate Court of Raleigh County involving the parties or members of their respective families.

In the divorce decree entered on March 9, 1992, the appellant was awarded custody of the parties' two infant sons, who were then seven and four years of age. The appellee was granted visitation, but, in accordance with an agreement between the parties, the court required the visitation to be limited and supervised, in that it was to be conducted at the home of the children's maternal grandmother between 12:00 o'clock noon and 6:00 o'clock p.m. on Saturdays.

Only one supervised visitation was conducted at the children's grandmother's house. That session ended after the appellee became involved in a physical altercation with the appellant's mother, the children's maternal grandmother. As a result of the altercation, police were summoned to the scene.

After the incident, the appellee complained that he had been denied appropriate visitation with the children. A hearing was conducted on the question before a family law master, and the family law master directed that other arrangements be made to afford the appellee reasonable, controlled visitation.

Subsequently, visitations were scheduled at Pinecrest Hospital in Beckley, West Virginia, and the appellant hired an off-duty social worker, who was employed by the West Virginia Department of Human Resources as a member of its Child Protection Agency, to supervise. Two visitation sessions were conducted, but the Pinecrest Hospital administration refused to allow further sessions because during the second visitation, the police were called by the social worker, who apparently felt that the appellee was attempting to remove one, or both, of the children from the hospital premises.

The appellee complained about the denial of further visitation, and the question was addressed at a hearing conducted on December 22, 1992. At that hearing, the appellant testified that the appellee had behaved violently toward the parties' two children and had spanked the older child so hard that he had "whelps" and bruises all over his back. She also said that the appellee would regularly "holler" and curse at the children. She indicated that the children were terrified of the appellee and that upon coming into contact with him, the older child would become physically ill.

In spite of the appellant's testimony, the family law master, at the conclusion of the hearing, recommended that the appellee be afforded unsupervised visitation during specified periods. The circuit court subsequently adopted this recommendation.

West Virginia Code § 48-2-15 governs the circumstances under which a circuit court may in a divorce proceeding grant an noncustodial parent child visitation rights. West Virginia Code § 48-2-15(b)(1), the section specifically dealing with visitation, provides, in relevant part:

> The court may provide for the custody of minor children of the parties, subject to such rights of visitation, both in and out of the residence of the custodial parent or other person or persons having custody, as

may be appropriate under the circumstances.

In *Mary D. v. Watt,* 190 W.Va. 341, 438 S.E.2d 521 (1992), this Court concluded that W.Va.Code § 48–2–15(b)(1) is sufficiently broad to allow, and in fact contemplates, that a trial court may order supervised visitation under appropriate circumstances. *See also, Sherry L.H. v. Hey,* 187 W.Va. 353, 419 S.E.2d 17 (1992).

In the *Mary D.* case, the Court stated:

[W]here supervised visitation is permitted, it is of paramount importance that the child's best interests be served by not only what the *court* deems is in his or [sic] best interests, but also, that the child feels safe when such visitation is exercised by the noncustodial parent. Accordingly, the person who supervises such visitation must be one with whom the *child* is comfortable and feels safe. It is not enough that the person who is appointed to supervise visitation is in the best interests of the child from the court's standpoint, which would merely assure that no further abuse will occur during such visitation. Rather, the fears of the child must be allayed as well so that the child may be protected not only from further physical harm, but also further psychological harm.

190 W.Va. at 349, 438 S.E.2d at 529.

■ Although the *Mary D.* case dealt with sexual abuse, implicit in a reading of it is this Court's view that where the physical welfare of a child is involved, whether because of the sexual propensities of a parent or because of the parent's propensity to violence, supervision is appropriate and may be necessary to safeguard and promote the welfare of the child. Further, there can be no doubt that W.Va.Code § 48–2–15(b)(1) is sufficiently broad to authorize a trial court to place supervisory restrictions on child visitation where there is substantial evidence that a party entitled to visitation might demonstrate violent behavior toward a child.

■ Of course, the *Mary D.* case indicates that the best interests of the child must be the determining factor in assessing how supervision should be conducted. This proposition is in accordance with this Court's general rule that:

"In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syllabus Point 1, *Holstein v. Holstein,* 152 W.Va. 119, 160 S.E.2d 177 (1968).

Syllabus, *Taylor v. Taylor,* 168 W.Va. 519, 285 S.E.2d 150 (1981).

■ In the case presently before the Court, there was substantial evidence indicating that the appellee had on occasion demonstrated violent propensities and some evidence that his violence had, at least, disturbed his children. Although a portion of this evidence came from parties who might be considered to be biased in favor of the appellant, included in the record is the apparently disinterested testimony of Charles Lilly, a lieutenant with the Raleigh County Sheriff's Department. He testified that on one occasion he had been hurriedly summoned to the home of a neighbor, Mrs. Bower, where the appellee had apparently just caused a disturbance. When he got to the house, he could see the appellant on the porch "crying, screaming, she had blood on her," the clear implication of his testimony being that the appellee had assaulted or otherwise seriously disturbed her. When he went inside, he found the man who is currently married to the appellant. He had been assaulted. Further: "The children were crying. Mrs. Bower was crying and upset." When asked whether the children might have been injured, Lieutenant Lilly responded:

One of the children, I'm not sure which one because, like I say, that's the first—and I could have possibly saw them again since then, I don't really know. I don't remember. One of them seemed to have had a—was crying a lot and was complaining of his face hurting.

When asked whether he had observed any kind of mark or injury on the child, Lieutenant Lilly responded, "Just a red place."

While this Court feels that continuing contact by an infant child with a noncustodial parent is important to the welfare of the child, it is also important that a court, in

authorizing visitation, prescribe such supervisory requirements as are necessary to ensure that the visitation will not be detrimental to the child's welfare.

Given the evidence in the present case of the previous violent propensities of the appellee, as well as the evidence that those propensities had had some impact upon the parties' children, this Court believes that the trial court erred in authorizing visitation with the appellee without imposing some restrictions on the visitation.

█ Obviously, the previous visitation arrangements were unsatisfactory. This may have been due, in part, to the choice of supervisors, that is, the appellant's mother in the first instance and a social worker hired by the appellant in the second. Apparently these arrangements provoked, at least to some degree, the appellee.

Rather clearly, implicit in the idea of visitation is the concept that a child be allowed to develop some sort of personal bond with the parent he is visiting. The presence of the appellant's representatives in the previous visitation arrangements may have interfered with the development of that bonding process.

In view of this, the Court believes that an arrangement should be devised by the trial court in which a wholly impartial supervisor is present to monitor future visitation between the appellant's former husband and the infant children. The Court also believes that the impartial supervisor should be directed to refrain, insofar as it is consistent with the welfare of the children, from interfering with the bonding process between the appellant's former husband and the children.

█ Under W.Va.Code § 48–2–15(b)(1), a trial court has rather broad discretion in setting the conditions of visitation, and, as indicated in *Mary D. v. Watt*, included within this discretion is the discretion to determine whether the parties involved in the visitation situation require counseling or treatment.

It is rather clear to this Court that the trial court is in a better position to assess the conditions surrounding the parties in the present case. While, as previously indicated, the Court believes that the trial court erred in failing to require supervision, and while the Court finds that the trial court should provide for a neutral supervisor, the Court also believes that the trial court should determine the other conditions to be placed upon the required supervision. At the very least, the trial court should consider whether counseling and treatment are appropriate for the parties.

█ Implicit in what the Court has said in this opinion is its belief that child visitation with a noncustodial parent is a circumstance which normally will promote the welfare of a child. At the heart of any such visitation is the emotional bonding which can develop between the noncustodial parent and the child. Insofar as it is consistent with the welfare of the children, a trial court, in ordering any sort of supervision of visitation, should take such steps as would promote the bonding between the noncustodial parent and child. If after a period of time there is evidence of bonding, and if the noncustodial parent demonstrates a clear ability to control the propensities which necessitated supervision, then it would be appropriate for the trial court to diminish gradually the degree of supervision required with the ultimate goal of providing unsupervised visitation.

For the reasons stated, this Court believes that the trial court erred in directing that the appellant's former husband be awarded nonsupervised visitation with his children. The Court believes that the circuit court's ruling should be reversed and this case should be remanded with directions that the trial court grant visitation only in accordance with the principles enunciated herein.

Reversed and remanded with directions.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.