504 S.E.2d 154

**Tara Mickalina Sandwell MEADOWS (Coit), Appellee,**

v.

**Timothy Dale MEADOWS, Appellant.**

**No. 24642.**

Supreme Court of Appeals of West Virginia.

Submitted April 29, 1998.

Decided June 22, 1998.

Roy D. Law, Buckhannon, for Appellee.

James Wilson Douglas, Sutton, for Appellant.

## PER CURIAM: [1]

This action is before this Court upon appeal of a final order of the Circuit Court of Webster County entered on March 25, 1997. The issue before this Court arose out of the divorce action between the appellant, Timothy Meadows, and the appellee, Tara Meadows and concerns Ms. Meadows' visitation with the parties' five-year-old child.[2] In August 1996, Mr. Meadows obtained an ex parte order terminating Ms. Meadows' visitation based on an allegation that the child had been sexually abused while in her custody. After conducting hearings on the matter, the circuit court restored Ms. Meadows' schedule A visitation. On appeal, Mr. Meadows contends that the circuit court arbitrarily disregarded unrefuted and uncontradicted expert testimony that the child had been abused.

He also contends that the circuit court erred in reinstating Ms. Meadows' schedule A visitation without the benefit of an antecedent pleading and appropriate notice of hearing.[3]

This Court has before it the petition for appeal, the designated record, and the briefs and argument of counsel. Based upon a careful review of the record and for the reasons set forth below, this Court finds the circuit court erred in restoring Ms. Meadows' schedule A visitation.

I

The parties were married on February 29, 1992, and their daughter was born on August 5, 1992. In March 1993, the parties separated, and Ms. Meadows filed a complaint for divorce. The family law master granted temporary custody of the child to Mr. Meadows and schedule A visitation to Ms. Meadows. A divorce decree was entered on May 6, 1994, on the grounds of irreconcilable differences. However, the issue of custody of the child remained unresolved.

In subsequent custody hearings, the evidence failed to establish a primary caretaker of the child. Ultimately, the family law master concluded that it was in the child's best interest for Mr. Meadows to be granted custody with regular schedule A visitation by Ms. Meadows. The circuit court adopted the family law master's recommendation on March 3, 1995.

Following a two-week visitation between the child and Ms. Meadows in July 1995, Mr. Meadows obtained an ex parte order from the circuit court terminating all visitation. Mr. Meadows alleged that the child had been sexually abused by Ms. Meadows and her new husband, Robert Coit, Jr. On August 16, 1995, a temporary hearing was held on the matter, and the circuit court ordered

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2. On September 5, 1996, this Court refused Ms. Meadows' appeal of a June 6, 1994 order granting custody of the child to Mr. Meadows.

3. Mr. Meadows contends that the only issue before the circuit court was Ms. Meadows' Motion for Modification and Enforcement of a Temporary Order which was filed on October 12, 1995.

supervised visitation by Ms. Meadows pending a full evidentiary hearing.[4]

In October 1995, a social worker with the Department of Health and Human Resources advised Mr. Meadows to withhold visitation if there was any evidence of sexual abuse. Accordingly, Mr. Meadows refused to allow Ms. Meadows to visit the child from November 1995 until October 1996.

On October 1, 1996, a hearing was held before the circuit court on Ms. Meadows' motion to modify the August 16, 1995 order.[5] At the end of the hearing, the court found that the evidence did not establish that the child had been sexually abused. Ms. Meadows' supervised visitation was restored pending a hearing scheduled for October 18, 1996, for the presentation of additional evidence.[6] The next hearing did not occur until December 9, 1997. At that time, the court viewed videotapes of the child interacting with each parent. The court also heard additional testimony from the parties. Thereafter, the circuit court found that Mr. Meadows had failed to present evidence that the child had been sexually abused. As reflected in the final order, the circuit court restored schedule A visitation to Ms. Meadows.[7]

## II

In this case, we are reviewing challenges to the findings and conclusions of the circuit court. Accordingly, we apply a two-prong deferential standard of review. "We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to *de novo* review." *Phillips v. Fox*, 193 W.Va. 657, 661, 458 S.E.2d 327, 331 (1995). See also Syllabus Point 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).

■ With respect to the circuit court's power to establish visitation arrangements for a non-custodial parent, we have recognized that:

W.Va.Code 48–2–15 (1993)[8] grants the circuit court in a divorce proceeding plenary power to order and enforce a non-custodial parent's visitation rights with his or her children. W.Va.Code 48–2–15(b)(1) (1993), the subsection specifically dealing with visitation, provides, in pertinent part:

The court may provide for the custody of minor children of the parties, subject to such rights of visitation, both in and out of the residence of the custodial parent or other person or persons having custody, as may be appropriate under the circumstances. In every action where visitation is awarded, the court shall specify a schedule for visitation by the noncustodial parent....

Syllabus Point 2, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996). We have also recognized that this statutory provision per-

---

**4.** The order instituting supervised visitation was not entered until December 1, 1995.

**5.** The reason for the lengthy delay between the August 16, 1995 temporary hearing and the October 1, 1996 evidentiary hearing is not fully explained in the record, but it appears that Ms. Meadows' may have been obtaining new counsel.

**6.** The record indicates that Mr. Meadows reported the alleged sexual abuse to the police in August 1995. Although an investigation was undertaken, no charges were filed. Shortly after the allegations were made, Ms. Meadows and Mr. Coit took privately administered polygraph examinations which they both passed. Ms. Meadows and Mr. Coit were scheduled to take additional polygraphs administered by the state police. The circuit court scheduled the October 18, 1996 hearing to receive the results of the additional polygraphs. However, it appears that these tests were never administered.

**7.** On November 14, 1997, while this appeal was pending, Mr. Meadows filed a motion to stay the circuit court's enforcement of its order restoring Ms. Meadows' schedule A visitation. The brief filed in support of the motion indicated that the child had suffered a broken wrist while visiting Ms. Meadows. In addition, a letter report from Stephanie Truman, M.A., of Health Transitions, attached to the brief, indicated that she was concerned for the child's safety based on the child's reporting that when she was visiting her mother she was not allowed out of her room and she was told that she had to stay there forever. On November 21, 1997, we granted the motion and ordered the circuit court to restore supervised visitation pending this appeal.

**8.** *W.Va.Code* 48–2–15 was amended in 1996, however such amendment does not affect this appeal.

mits a trial court to order supervised visitation if there is evidence that one of the parents has sexually abused a child involved in the proceedings. *See Mary D. v. Watt,* 190 W.Va. 341, 348, 438 S.E.2d 521, 528 (1992). In Syllabus Point 2 of *Mary D.,* we held that supervised visitation is warranted where there is credible evidence that the alleged sexual abuse occurred.

■ In Syllabus Point 5 of *Carter,* we explained: "In visitation as well as custody matters, we have traditionally held paramount the best interests of the child." In this regard, we held in Syllabus Point 3 of *Carter* that:

> Because of the extraordinary nature of supervised visitation, such visitation should be ordered when necessary to protect the best interests of the children. In determining the best interests of the children when there are allegations of sexual or child abuse, the circuit court should weigh the risk of harm of supervised visitation or the deprivation of any visitation to the parent who allegedly committed the abuse if the allegations are false against the risk of harm of unsupervised visitation to the child if the allegations are true.

■ In the case *sub judice,* Mr. Meadows contends that the circuit court arbitrarily disregarded unrefuted expert testimony that the child had been abused. At the hearing on October 1, 1996, Dr. Elizabeth Frazier Wilheight, a member of the Department of Psychiatry at the West Virginia University School of Medicine,[9] and Karen Sue Bell, a licensed social worker and child abuse therapist, testified. Dr. Wilheight stated that the child disclosed sexual abuse by her mother and stepfather and instantly became nervous and disassociative at the mention of the word "mother." Dr. Wilheight testified that she had reviewed a medical report from Dr. Salgado of Summersville, West Virginia, dated July 25, 1995, which indicated that the child's vagina looked a "little red." In addition, Dr.

Wilheight said that she had received reports from a psychiatrist, two psychologists, and a social worker wherein the child reported being abused.[10] Dr. Wilheight was of the opinion that the child had been abused. Ms. Bell testified that she had met with the child once in her office and also observed the child on one occasion when she was taken for visitation with Ms. Meadows. Ms. Bell also reported that the child became withdrawn when the word "mother" was mentioned.

The parties, Mr. Coit, and his parents also testified at the hearing on October 1, 1996. Mr. Meadows testified that when he picked up his daughter on July 23, 1995, after visitation in her mother's home, she was crying and extremely upset. As the evening progressed, she came to tell him that her mommy and Rob had touched her "doo doo" and hurt her real bad. Yet, Ms. Meadows and Mr. Coit testified that they had not abused the child and that they had each passed privately administered polygraph examinations. They, along with Mr. Coit's parents, stated that the visitation exchanges of the child were always confrontational. In the subsequent hearing on December 9, 1996, the parties testified again, but no expert testimony was presented. Thereafter, the circuit court restored Ms. Meadows' schedule A visitation.

After carefully reviewing the evidence, we find the circuit court abused its discretion in disregarding the testimony of Dr. Wilheight and Ms. Bell and restoring Ms. Meadows' schedule A visitation. The circuit court found that the evidence did not establish that the child had been abused, essentially concluding that the allegations set forth in this case were spurred by the animosity between the parties and their families. However, as discussed above, Dr. Wilheight met with the child on several occasions. Her testimony that the child reported being abused cannot be ignored especially considering that several other professionals, including Ms. Bell, ren-

---

9. Dr. Wilheight is also the owner of Health Transitions, a comprehensive mental health facility in Summersville, West Virginia. Dr. Wilheight stated that the child was treated at her facility on thirteen occasions.

10. The reports of Janet Vondran, M.D., L. Andrew Steward, Ph.D., Tara Mullins, M.A., and Jenny Lovely, child protective services worker for the Department of Health and Human Resources, were admitted into evidence at the hearing.

dered similar opinions. While the hostility between the parties and their families is obvious from the record, we cannot disregard unrefuted testimony that this child has reported being abused and exhibits behavior consistent therewith.[11]

As we indicated above, the best interests of the child must guide our decisions in these types of cases. *See* Syllabus Point 5, *Carter, supra.* In *Carter,* we explained:

In the difficult balance which must be fashioned between the rights of the parent and the welfare of the child, we have consistently emphasized that the paramount and controlling factor must be the child's welfare. "[A]ll parental right[s] in child custody matters," we have stressed, "are subordinate to the interests of the innocent child." David M. v. [Margaret M.], [182 W.Va. 57, 60,] 385 S.E.2d [912] at 916 [ (1989) ].

196 W.Va. at 245–46, 470 S.E.2d at 199–200 (quoting *In the Interest of Carlita B.,* 185 W.Va. 613, 629, 408 S.E.2d 365, 381 (1991)). With these principles in mind and considering the credible evidence in the record, we find that at this time supervised visitation is necessary and appropriate to safeguard and promote the welfare of this child.[12]

In *Belinda Kay C. v. John David C.,* 193 W.Va. 196, 199, 455 S.E.2d 565, 568 (1995), a case we remanded for implementation of supervised visitation based on evidence that the noncustodial parent had exhibited violence towards his children, we directed the trial court to consider whether counseling and treatment was appropriate for the parties. We further advised that:

Implicit in what the Court has said in this opinion is its belief that child visitation with a noncustodial parent is a circumstance which normally will promote the welfare of a child ... If after a period of time there is evidence of bonding, and if the noncustodial parent demonstrates a

clear ability to control the propensities which necessitated supervision, then it would be appropriate for the trial court to diminish gradually the degree of supervision required with the ultimate goal of providing unsupervised visitation.

*Id.* Upon remand, we believe that these same considerations should be addressed by the circuit court in this case. Accordingly, the March 25, 1997 order of the Circuit Court of Webster County is reversed, and this case is remanded with directions that the circuit court grant visitation only in accordance with the principles enunciated herein.

Reversed and remanded.

---

**11.** In response to questions by the circuit court as to whether it was possible that the child had been coached by the father and paternal grandparents, Dr. Wilheight explained that if that were the case she would expect the child to be more nervous and her reports to be inconsistent. Dr. Wilheight said that the child's reports were consistent.

**12.** Because of our decision to reverse the order of the circuit court, we do not find it necessary to address Mr. Meadow's additional assignment of error.