IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2026 Term

_____

No. 25-109

_____

In Re S.S.

**FILED**

**April 24, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

Appeal from the Circuit Court of Randolph County
The Honorable Jaymie G. Wilfong, Judge
Case No. CC-42-2023-JA-97

REVERSED IN PART, VACATED IN PART, AND
REMANDED WITH INSTRUCTIONS

_____

Submitted: March 4, 2026
Filed: April 24, 2026

Steven B. Nanners, Esq.
Nanners Law Office, PLLC
Buckhannon, West Virginia
Counsel for B.M., Petitioner

John B. McCuskey, Esq.
Attorney General
Lee Niezgoda, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for the Department of Human
Services, Respondent

Heather M. Weese, Esq.
Law Office of Heather M. Weese, PLLC
Elkins, West Virginia
Guardian ad Litem

JUSTICE EWING delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.    "We review a circuit court's decision to grant or deny a post-adjudicatory improvement period under an abuse of discretion standard."  Syllabus Point 1, *In re K.A.*, 251 W. Va. 626, 915 S.E.2d 520 (2025).

2.    "'"When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard." Syl. [Pt. 1], *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996).' Syllabus Point 1, *In re S. W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015)."  Syllabus Point 1, *In re Z.D.-1*, 251 W. Va. 743, 916 S.E.2d 375 (2025).

**Ewing, Justice**:

The petitioner, B.M., appeals the January 24, 2025, order of the Circuit Court of Randolph County terminating his parental rights to S.S.[1] On appeal, the petitioner contends that the circuit court erred by terminating his parental rights without granting him a post-adjudicatory improvement period. After our review of the parties' briefs and oral arguments, the appendix record, and the pertinent legal authority, we find that the circuit court abused its discretion in denying the petitioner's motion for a post-adjudicatory improvement period prior to terminating his parental rights.[2] Therefore, we reverse the court's dispositional order to the extent that it denies petitioner's motion for an improvement period; vacate the court's dispositional order to the extent that it terminates petitioner's parental rights; and remand this matter to the circuit court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

---

[1] We use initials to refer to the parties in this case because it involves minors and sensitive matters. *See* W. Va. R. App. P. 40(e)

[2] Although Judge Wilfong entered the dispositional order on appeal, Judge David H. Wilmoth presided over the abuse and neglect proceedings below, including the dispositional hearing. At the conclusion of the dispositional hearing, Judge Wilmoth made findings and stated his ruling on the record, which decision is memorialized in the written order signed by Judge Wilfong.

Four days after the birth of S.S. in December 2023, the West Virginia Department of Human Services ("DHS")[3] filed a petition alleging that S.S. was an abused and neglected child due to the mother's substance abuse, the child being born drug exposed, and the mother's history of lack of stable housing and domestically violent relationships. The petition named the petitioner as the alleged father of S.S. and detailed allegations by the mother that the petitioner had a history of domestic violence and substance abuse. Following paternity testing, an order entered in April 2024 confirmed that the petitioner is the biological father of S.S.

In September 2024, the DHS filed an amended petition, adding allegations that the petitioner "was convicted on December 27, 2023 of Third Offense Driving Suspended, and sentenced on March 25, 2024 to 1-3 years incarceration." The amended petition further alleged that the petitioner "has a lengthy criminal history including DUI with several subsequent driving revoked charges, multiple charges of domestic battery/assault, and related destruction of property."[4] Additionally, the amended petition stated that, due to the petitioner's incarceration, he had not been "present to supply [S.S.]

---

[3] Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel for the DHS.

[4] Other than these allegations in the amended petition and the petitioner's testimony at the dispositional hearing, the record includes no information regarding the petitioner's criminal conviction, sentence, or criminal history.

with food, clothing, shelter, supervision or care." Finally, the DHS alleged that the petitioner had a substance abuse problem that had impaired his ability to parent.

At an adjudicatory hearing in November 2024, the petitioner stipulated to his "use/abuse of illegal drugs which has negatively impacted his ability to parent" and to "[n]ot providing stable housing and not providing for the financial needs of the child due to his incarceration." Based on his stipulation, the circuit court adjudicated the petitioner to be an abusing and neglectful parent. Shortly thereafter, the petitioner filed a written motion for a post-adjudicatory improvement period.

A dispositional hearing was held in January 2025. The petitioner's motion for a post-adjudicatory improvement period and the DHS's motion to terminate the petitioner's parental rights were pending before the circuit court at that time. The petitioner was the only witness called to testify at the dispositional hearing. He testified that he had been incarcerated since March 10, 2024, for "third offense driving revoked prior for DUI" and that he would "automatically get out on the post-mandatory release, March 10th [2025], on six months of parole."[5] The petitioner acknowledged that he had not seen S.S. due to his incarceration.

---

[5] During oral argument before this Court, counsel confirmed that the petitioner was released from incarceration and that he has now been discharged from parole.

The petitioner further testified that he took substance-abuse recovery classes, several parenting classes, and an anger management course while incarcerated. He stated that these classes had helped with the drug issues to which he stipulated and had also taught him a lot about parenting. The petitioner reported that he also obtained his GED while incarcerated and that, shortly before he was incarcerated, he finished the necessary classes and had his driving privileges restored. Additionally, the petitioner testified that upon his release, he planned to live with his mother in Randolph County until he got his house back, would "work underground," and would be available for drug screens. In conclusion, the petitioner testified that he was "willing to do whatever it takes."

On cross-examination of the petitioner by the prosecuting attorney, the following exchange took place:

Q:	All right. How long prior to this petition - - how long have you used drugs in your past?
A:	Um, I mean, on and off all of my life, honestly.
Q:	So you would agree with me - - you would call yourself an addict?
A:	Not so much an addict, but I used.
Q:	But you used repeatedly over the course of your entire life?
A:	Yes, sir.

At the conclusion of the dispositional hearing, the circuit court stated its findings and conclusions on the record, relying heavily on this exchange and finding that the petitioner "denies addiction being a problem" and has a "lack of recognition of the drug problem that he admits to having." The court also found that the petitioner could not participate in an

4

improvement period due to his incarceration and that an improvement period was not in the best interests of the child.

Despite denying the petitioner's motion for an improvement period, the circuit court commended the petitioner on the steps he had taken on his own, including getting his GED and driver's license back. The court stated that, "frankly, it's impressive." Nevertheless, the court proceeded to terminate the petitioner's parental rights, stating:

> But this is - - this case is not as much about his rehabilitation. This case is about what is in the best interest of the child. [Petitioner's] [felony criminal] case was about his rehabilitation, and he has done that. I am very, very happy he has been able to do that.
>
> This case is about what's in the best interest of his child. And having not seen his dad for - - or not seeing her dad for her entire life - - . . . he has passed the time to - - passed the time to be successful with that with so much time already gone.
>
> Um, this case has been going on for a long time. I don't think an improvement period is appropriate in this case. I don't think it's in the child's best interest, um, because of the period of time at which there has been no contact, no communication, no interaction, with the child. Um, I don't see that any other alternative other than termination is appropriate. . .

On January 24, 2025, the circuit court entered the dispositional order, denying the petitioner's motion for an improvement period and terminating his parental rights based on the following written findings:

> [The petitioner] acknowledges that he has had no role in the child's life since birth. [The petitioner] has stipulated to drug use, ineffective parenting, and cannot participate in an improvement period due to his incarceration. Further, the [c]ourt finds there is no reasonable likelihood that the

5

conditions of neglect or abuse could be substantially corrected in the near future. The [petitioner] denies that he is an addict. The [c]ourt does not believe an improvement period is in the best interest of the child.

It is from this order that the petitioner now appeals.

## II. STANDARD OF REVIEW

The petitioner challenges the denial of his motion for a post-adjudicatory improvement period. "We review a circuit court's decision to grant or deny a post-adjudicatory improvement period under an abuse of discretion standard." Syl. Pt. 1, *In re K.A.*, 251 W. Va. 626, 915 S.E.2d 520 (2025). Consistent with that standard, this Court reviews the contents of a final order as follows:

> "'When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.' Syl. [Pt. 1], *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996)." Syllabus Point 1, *In re S. W.*, 236 W. Va. 309, 779 S.E.2d 577 (2015).

Syl. Pt. 1, *In re Z.D.-1*, 251 W. Va. 743, 916 S.E.2d 375 (2025). We have explained that

> [a] finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

6

Syl. Pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). With this standard in mind, we turn to the parties' arguments.

## III. DISCUSSION

The petitioner contends that the circuit court improperly denied his motion for a post-adjudicatory improvement period and terminated his parental rights. The petitioner argues that the court should have granted him an improvement period because the actions he took while incarcerated to remedy the conditions of abuse and neglect show, by clear and convincing evidence, that he could comply with the terms and conditions of an improvement period, and that if an improvement period had been granted at the January 2025 dispositional hearing, he would have had four months following his release in March 2025 to participate in services and demonstrate compliance.

Both the DHS and guardian respond that the circuit court did not abuse its discretion in denying the petitioner an improvement period because the petitioner was unable to participate in the terms of an improvement period due to his incarceration. Additionally, the DHS and guardian argue that the petitioner's refusal to agree that he is "an addict" demonstrated that the petitioner failed to acknowledge the existence of his substance abuse problem, making the problem untreatable. The guardian further points to the length of time the case had been pending at disposition, the petitioner's lack of a relationship with S.S., and the tender age of S.S. as support for the court's decision. Upon review of the pertinent statutes, case law, and the court's underlying factual findings, we

agree with the petitioner that the court abused its discretion when it denied his motion for a post-adjudicatory improvement period.

"'[A]n improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re X.R.*, 926 S.E.2d 805, 814 (W. Va. 2026) (quoting *In re J.D.-1*, 247 W. Va. 270, 279, 879 S.E.2d 629, 638 (2022) (quoting *In re Emily & Amos B.*, 208 W. Va. 325, 334, 540 S.E.2d 542, 551 (2000))); *see also W. Va. Dep't of Hum. Servs. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990) ("The improvement period is granted to allow the parent an opportunity to remedy the existing problems."). "Indeed, the respondent parent bears the burden of showing that he or she should be granted the opportunity to remedy the circumstances that led to the filing of the abuse and neglect petition." *In re J.D.-1*, 247 W. Va. 270, 279, 879 S.E.2d 629, 638 (2022); *see also In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("[P]arents bear the burden . . . to show that they should be granted the opportunity to remedy the circumstances that led to the filing of the abuse and neglect petition.").

West Virginia Code § 49-4-610 (2015), which governs improvement periods, permits a circuit court to grant a post-adjudicatory improvement period when the respondent files a written motion requesting the improvement period and "demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period[.]" *Id.* In *State ex rel. West Virginia Department of Health & Human*

*Resources v. Dyer*, 242 W. Va. 505, 521, 836 S.E.2d 472, 488 (2019), we recognized that

our case law incorporates a best interests analysis into the statutory threshold requirements

for the granting of an improvement period, so we formally adopted stricter requirements,

holding that:

> Compliance with the statutory requirements contained in West Virginia Code § 49-4-610 (2015) does not unconditionally entitle a parent to an improvement period. Only where such an improvement period does not jeopardize a child's best interests should one be granted and the circuit court's order granting an improvement period should set forth findings demonstrating the lack of prejudice or harm to the child.

Syl. Pt. 3, *Id.* Therefore, an adult respondent's improvement period request requires a two-

fold inquiry of both statutory compliance and a best interests analysis.[6]

Turning to the present case, we find that the circuit court undertook the

appropriate analysis but abused its discretion in denying the petitioner's motion for an

---

[6] Our jurisprudence establishes a variety of caselaw-specific standards, typically framed in the context of a best interests analysis. For instance, we have upheld the denial of an improvement period where an adult respondent failed to acknowledge the existence of a problem and an improvement period was deemed to be futile. *See, e.g.*, *In re K.A.*, 251 W. Va. at 633-34, 915 S.E.2d at 527-28 (affirming denial of a motion for post-adjudicatory improvement period where, despite a stipulated adjudication, parent failed to acknowledge problems and continued to associate with violent domestic partners and drug users, showed no insight or changes in her attitude or behaviors, tested positive for illegal substances throughout the case, failed to participate in substance abuse treatment, and denied needing treatment); *State ex rel. P.G.-1 v. Wilson*, 247 W. Va. 235, 246, 878 S.E.2d 730, 741 (2021) (finding improvement period futile where respondent parent denied there was ever any domestic violence, said she did not "know why CPS showed up," and accused her children of telling "too many stories").

improvement period because its ultimate decision rested on clearly erroneous factual findings. We have explained that a court abuses its discretion "when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed but the circuit court makes a serious mistake in weighing them." *Shafer v. Kings Tire Serv., Inc.*, 215 W. Va. 169, 177, 597 S.E.2d 302, 310 (2004) (internal quotation marks and citation omitted). After reviewing the record, we are "left with the definite and firm conviction" that the court's findings underpinning its denial of the petitioner's motion for an improvement period were clearly wrong, and the court abused its discretion in relying on those improper factors. We address each of those mistaken findings in turn, concluding that the record supports the grant of an improvement period rather than denial.

First, the circuit court clearly erred in finding that the petitioner could not "participate in an improvement period due to his incarceration." Although the petitioner was incarcerated at the time of the dispositional hearing in January 2025, it was undisputed that he would be released two months later, in March 2025. The petitioner did not request a delayed improvement period to begin upon his release; rather, the petitioner moved for an improvement period to begin at once, and he accepted that he would only have four months after his release to demonstrate compliance and improvement.[7] *See* W. Va. Code

---

[7] The petitioner did not seek an impermissible "delayed improvement period" as inferred by the DHS. The DHS relies upon *In re Emily*, 208 W. Va. at 337, 540 S.E.2d at 554, in which the court granted the parents an improvement period to *commence* when the father was released from incarceration and the mother successfully completed long-

10

§ 49-4-610 (stating "a court may grant a respondent an improvement period of a period not to exceed six months"). Therefore, the court's finding that the petitioner "cannot participate in an improvement period" was clearly erroneous in view of the petitioner's uncontroverted testimony regarding his forthcoming release from incarceration and ability to participate in the improvement period upon release. That error is compounded by the possibility of a three-month extension to the improvement period, pursuant to West Virginia Code § 49-4-610(6).[8]

Second, the circuit court clearly erred in finding that the petitioner "denie[d] addiction being a problem" and lacked "recognition of [his] drug problem." *See W. Va. Dep't of Health & Human Res. ex rel. Wright v. Doris S.*, 197 W. Va. 489, 498, 475 S.E.2d

---

term inpatient substance abuse treatment. This Court reversed and remanded, finding that the delay was *indefinite* and extended the potential improvement periods well beyond the statutory six-month limit. *Id.* Unlike the parents in *In re Emily,* the petitioner did not seek a delayed improvement period but sought an improvement period to begin immediately, acknowledging that he could not actively participate until his release, leaving him four months to participate in the improvement period following his release. The petitioner did not seek to extend the statutory time-limit for the improvement period. For this reason, the DHS's arguments regarding a delayed improvement period are unavailing.

[8] West Virginia Code § 49-4-610(6) permits an additional three-month extension of a post-adjudicatory improvement period

> when the court finds that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child; and that the extension is otherwise consistent with the best interest of the child.

11

865, 874 (1996) (explaining that "failure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense"). The court based its finding that petitioner "denies that he is an addict" solely on the prosecuting attorney's cross-examination of the petitioner at the dispositional hearing, during which the prosecuting attorney asked the petitioner: "So you would agree with me - - you would call yourself an addict?"; to which the petitioner responded, "Not so much an addict, but I used." Although the petitioner may have balked at the idea of defining himself as "an addict," the petitioner never denied his substance abuse problem. On the contrary, the petitioner acknowledged his substance abuse issues and independently took steps to address them. As a basis for his adjudication, the petitioner stipulated to his "use/abuse of illegal drugs which has negatively impacted his ability to parent," and while incarcerated, the petitioner took advantage of numerous substance-abuse recovery classes.[9] Further, during his testimony at the dispositional hearing, the petitioner admitted to his substance abuse, stated that he was willing to participate in additional drug treatment services offered by the DHS upon his release, and testified that he would make himself available for drug screens with the "call-to-test"

_____

[9] The DHS and guardian make unpersuasive arguments about the "insignificant amount of time" that the petitioner applied himself to courses while he was incarcerated. The petitioner testified that he had completed eighty-four hours of substance abuse recovery and parenting classes while incarcerated, which is not insignificant, especially considering that recovery meetings and parenting classes for non-incarcerated respondents are typically only offered for several hours per week.

program. For all of those reasons, the court's finding that the petitioner failed to acknowledge his substance abuse problem is clearly erroneous.

Third, the circuit court clearly erred when it found that the length of time that had passed since the initiation of the case weighed in favor of denying the petitioner an improvement period. Although not included in the court's written order, during the dispositional hearing the court stated, as a reason for the denial, that the petitioner had "passed the time to be successful with [an improvement period] with so much time already gone." It is true that, at the time of the dispositional hearing in January 2025, the case had been pending for over one year. However, the petitioner was not adjudged the biological father of the child until April 2024, and allegations against the petitioner were not added to an amended petition until September 2024. The petitioner's motion for a post-adjudicatory improvement period was filed at the procedurally appropriate time, and the court could not have considered the motion until after adjudication, which took place in November 2024. Through no fault of the petitioner, the case had been pending for nearly eleven months before the petitioner was adjudicated. There is no reason to attribute this delay to the petitioner, and we have stated that a court cannot weigh procedural delays of this kind to the detriment of a party. *See, e.g.*, *State ex rel. L.D. v. Cohee*, 247 W. Va. 695, 701, 885 S.E.2d 633, 639 (2022) ("We have made clear that procedural delays of this kind cannot work to the detriment of the persons seeking custody of the child"); *In re J.P.*, 243 W. Va. 394, 402-403, 844 S.E.2d 165, 173-174 (2020) (declining to attribute "bureaucratic [procedural] delays" to the party seeking custody); *In re L.G.*, No. 24-14, 2025 WL

3083931, at *5 n.8 (W. Va. Nov. 4, 2025) (memorandum decision)(stating "we caution the court against holding any passage of time not attributable to the petitioner against her"). Accordingly, the fact that the court did not consider the petitioner's timely motion for an improvement period until the case was more than a year old did not justify denial of the motion.

Fourth, the circuit court clearly erred in relying on the petitioner's testimony that he had no role in the child's life since birth to deny the petitioner an improvement period. Although the petitioner was unable to have visitation with the child due to his incarceration, he testified to the proactive steps he took while incarcerated to be reunified with the child upon his release: obtaining his GED, getting his driver's license reinstated, and participating in recovery and parenting classes. Under the facts and circumstances of this case, the petitioner's lack of a bond with S.S. was not determinative of whether the petitioner was "likely to fully participate in the improvement period," W. Va. Code § 49-4-610, and it was improper for the court to rely on the absence of a bond rather than the statutory criteria for granting an improvement period. Additionally, no evidence was presented to suggest that the child's welfare would be jeopardized by the petitioner being granted an improvement period, during which time he would have visitation with S.S. and the opportunity to develop a relationship with her.[10] Because the child was removed from

_____

[10] Had the circuit court granted the petitioner an improvement period, the petitioner could have begun developing a bond with his then-one-year old child upon his release in March 2024. We are mindful that the child is now two years old, and that while prosecuting this appeal, the petitioner has still not had contact with the child. Although

14

the parents at birth, visitation during the case is the only way the parents could develop a bond with S.S. *See, e.g.*, *Belinda Kay C. v. John David C.*, 193 W. Va. 196, 199, 455 S.E.2d 565, 568 (1995) ("Rather clearly, implicit in the idea of visitation is the concept that a child be allowed to develop some sort of personal bond with the parent he is visiting").

Ultimately, the circuit court concluded that an improvement period should be denied as not being in the child's best interest. Although the court was correct to consider the child's best interests, its conclusion rests on the preceding, clearly erroneous, factual findings. The only evidence presented at the dispositional hearing was the petitioner's testimony regarding the steps that he had independently taken toward rehabilitation and his ability and willingness to fully participate in an improvement period upon his imminent release. Despite acknowledging that the petitioner's accomplishments were "impressive," the court mistakenly concluded that the petitioner's rehabilitation was only relevant to his criminal case, stating that "this [abuse and neglect] case is not as much about [the petitioner's] rehabilitation," but was, instead, only "about what is in the best interest of the child." As "in all cases involving children, the polar star is the best interests of the child." *In re L.M.*, 235 W. Va. 436, 445, 774 S.E.2d 517, 526 (2015). However, an abuse and neglect case also focuses on an adult respondent's rehabilitation, particularly in relation to an improvement period, the goal of which "is to facilitate the reunification of

aware of the difficulties that may result from beginning visitation between the petitioner and the child at this time, we are constrained to addressing the circuit court's exercise of its discretion at the time it entered the dispositional order on appeal.

families whenever that reunification is in the best interests of the children involved." *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 258, 470 S.E.2d 205, 212 (1996). As we have explained,

> . . . the ultimate goal in abuse and neglect proceedings is the repair of the conditions in the home that led to the petition's filing and the reunification of the child(ren) with his/her parent(s) when such reunification will serve the child(ren)'s best interests. *See, e.g.,* W. Va. Code § 49-1-105(b)(3) (2015) (identifying purpose of "[t]he child welfare ... system" as including to "[p]reserve and strengthen the child family ties"); W. Va. Code § 49-4-604(a)(2) (requiring family case plan to "facilitate the return of the child to his or her own home").

*In re H.W.*, 247 W. Va. 109, 121, 875 S.E.2d 247, 259 (2022); *see also State ex rel. C. H. v. Faircloth*, 240 W. Va. 729, 741, 815 S.E.2d 540, 552 (2018) ("Certainly the over-arching purpose of our abuse and neglect statutory construct continues to be the correction of conditions of abuse and neglect and the return, if reasonably possible, of the children to their homes"). The petitioner's accomplishments were relevant to the correction of the conditions of abuse and neglect and to the possibility of reunification of S.S. with her father. Accordingly, the court abused its discretion when it ignored the petitioner's "impressive" progress toward rehabilitation—"a material factor deserving significant weight." *See Shafer*, 215 W. Va. at 177, 597 S.E.2d at 310.

When the petitioner's efforts are properly acknowledged and considered in the context of the statutory requirements of West Virginia Code § 49-4-610(2), it is clear that the petitioner demonstrated that he was likely to fully participate in an improvement period. Moreover, no evidence was presented to suggest that the child's best interests

16

would have been jeopardized by the petitioner having an opportunity, through an improvement period, to demonstrate that he had overcome his substance abuse, could provide for S.S., and could be a father to his then one-year-old daughter.[11] Therefore, the record supports the conclusion that the petitioner should have been granted a post-adjudicatory improvement period.

Based on the foregoing, we conclude that the circuit court abused its discretion in denying the petitioner's motion for a post-adjudicatory improvement period. Accordingly, the court's dispositional order must be vacated, in part, to the extent that it terminates the petitioner's parental rights,[12] and must be reversed, in part, and remanded,

---

[11] We have long recognized that it is not in a child's best interests to unnecessarily extend the length of an abuse and neglect proceeding. *See, e.g.*, *In re Emily*, 208 W. Va. at 337, 540 S.E.2d at 554 ("[W]e repeatedly have held in our case law that abuse and neglect proceedings should be resolved as expediently as possible in order to safeguard the well being of the young children at the heart of such proceedings."); Syl. Pt. 1, in part, *In re Carlita B.,* 185 W.Va. 613, 408 S.E.2d 365 (1991) ("Unjustified procedural delays wreak havoc on a child's development, stability and security."). In the present case, the petitioner timely filed his motion for a post-adjudicatory improvement period, and the court considered it at the procedurally appropriate stage of the proceedings with respect to the petitioner. The petitioner had not been granted any previous improvement period and was not seeking any delay or extension of the improvement period beyond that contemplated by statute. Accordingly, the grant of an improvement period to the petitioner would not have been an "unjustified procedural delay[ ]" that would have jeopardized the best interests of S.S. Moreover, at the time of the dispositional hearing, the child's mother was doing well in family treatment court as part of her post-adjudicatory improvement period in the case, so there was no evidence that granting the petitioner an improvement period would have unduly delayed permanency for the child.

[12] As this matter is being remanded based on the denial of the petitioner's motion for a post-adjudicatory improvement period, it is not necessary to address the propriety of the circuit court's termination of parental rights pursuant to West Virginia Code § 49-4-604(c)(6) (2020).

to the extent that it denies the petitioner's motion for a post-adjudicatory improvement period. We are cognizant that the child is now two years old and that the petitioner has not been afforded the opportunity to develop a relationship with the child. Therefore, on remand, the court must exercise its discretion in fashioning terms of an improvement period, in conjunction with the multi-disciplinary treatment team, that are the least disruptive to the child and that will ensure her safety, while fully providing the petitioner with the opportunity to correct and/or demonstrate his correction of the conditions of abuse and neglect. *See, e.g.*, *In re J. G.*, 240 W. Va. 194, 204, 809 S.E.2d 453, 463 (2018) (explaining that the court's discretion "is intended to allow the court to fashion appropriate measures and remedies to highly complex familial and inter-personal issues"); *Peggy F.*, 184 W. Va. at 64, 399 S.E.2d at 464 ("The improvement period is granted to allow the parent an opportunity to remedy the existing problems.").

## IV. CONCLUSION

For the reasons discussed above, we vacate the January 24, 2025, dispositional order, in part; reverse, in part; and remand this case to the circuit court for further proceedings consistent with this opinion. The Clerk is directed to issue the mandate contemporaneously herewith.

Vacated, Reversed and Remanded with Directions.